Kellum v. Smith.

N. K. KELLUM v. BENJ. J. SMITH.

The validity of sales of property of estates of deceased persons, by order of the County Court, in due course of administration, is not affected by subsequent proceedings which result in setting aside the will under which the estate was administered.

See this case for evidence which was held insufficient to sustain a verdict finding fraud in a purchase at administrator's sale.

There can be no more satisfactory ground for setting aside contracts, or vacating the most solemn acts and judgments of Courts, than fraud, where it is established by proof; but there could be no more dangerous doctrine than that which would recognize a right in juries to deduce the conclusion of fraud without competent evidence.

Appeal from Montgomery. Tried below before the Hon. Peter W. Gray.

Ben Fort Smith died in July, 1841, leaving a will which was probated in Montgomery county, and in which, after many specific legacies, he bequeathed the residue to his nephew, the

appellee, and his sister, Mrs. T. B. J. Hadley ; making the latter executrix of his will and testamentary guardian of her co-legatee, the appellee.

On the 6th of June, 1853, the appellee, having arrived at full age, brought suit in Harris county against the said Mrs. T. B. J. Hadley and her husband, in their capacities of co-legatee, executors and testamentary guardians, for his share of said estate under the will.

On the 29th of June, 1855, the presiding Judge, having discovered during the trial, that he had been of counsel in matters connected with the suit, declined to proceed with the trial, whereupon by consent the consideration of the cause was adjourned until next day for the purpose of consulting as to a compromise ; and next day, again came the parties by their attorneys and said they had agreed to the following judgment, viz : that the plaintiff take a non-suit, and the defendants assume the payment of the costs ; judgment accordingly.

In the meantime, on the 8th of August, 1853, the appellee commenced this suit in the District Court of Montgomery county, praying a *certiorari* to remove all the proceedings of the Probate Court to the District Court, for revision ; alleging that by virtue of a joint resolution of the Congress of the Republic of Texas, the appellee had been adopted by Ben Fort Smith in his life-time, as his sole heir ; that the will was defective in particulars stated ; that all the proceedings of the Probate Court were irregular and void ; that appellee was entitled to the whole estate, &c. The property sued for in the suit in Harris county, was also claimed in this. The petition contained the following allegations : " That during the course of the administration upon said estate, the said Piety L. Hadley, as ex-" ecutrix, and Thos. B. J. Hadley, the husband, as attorney in " fact and co-administrator, did illegally and fraudulently pro-" cure orders for the sale of property belonging to the said " Smith's estate, from the Probate Court of Montgomery county,

" and did fraudulently, illegally and improperly execute said
" orders, as well as other orders for the sale of property of the
" said estate, obtained by the creditors thereof, by the sacrifice
" of the property ordered to be sold, and by fraudulent agree-
" ments made with purchasers, whereby the sales were not con-
" ducted in good faith, nor the property sold to the highest bid-
" der, nor at a fair and equitable price, to-wit : an order," &c.
" [after reciting several orders,] " an order for the sale of the
" Sulphur Spring tract of land containing two-thirds and one-
" fourth of a league, made at the Oct. Term of said Court, A.
" D., 1848, of which Nathaniel K. Kellum became the purchaser
" for the alleged sum of $2875 42, being greatly less than the
" actual value of said tract of land." Prayer for *certiorari*,
revision, &c. " and that your Honor will set aside and decree
" to be null and void the said pretended will, and the said ille-
"gal and fraudulent orders and sales," &c. Prayer that Kellum
and others be made parties.

Kellum excepted to the petition, on the ground, among
others, that it did not allege against this defendant or charge
him with any special fraud ; and that the petition did not
show any good cause for making him a party.

He also pleaded the Statute of Limitations ; that he was a
purchaser in good faith, and claimed for valuable improve-
ments.

On the 22d of March, 1855, appellee alleged that he did not
arrive at full age until the month of March, 1852.

On the 19th of September, 1855, appellee amends his peti-
tion ; makes his allegations respecting fraud in the purchase
by McKinney specific, by filing a copy of the agreement signed
by Hadley, and alleges as follows about the sale of the Sulphur
Spring tract to Kellum : " He further avers, that the order for
'' the sale of the Sulphur Spring and other property, entered
" by the Probate Court at October Term, A. D., 1848, was and
" is void and fraudulent, because the same was made contrary
" to law, in this, to-wit : said order was made for the sale of the

" improved lands of said estate, before disposing of the unim-
" proved and uncultivated lands. 2d. Because made to pay a
" specific debt, when it should have been made to pay creditors
" generally. 3d. Because made without exhibiting a schedule
" of the creditors of said estate, with the amounts of their res-
" pective claims, and for other causes ; and plaintiff further
" avers that the sale in pursuance of said last mentioned order
" was illegal, fraudulent and void, because the improved and
" only improved land belonging to said estate was sold to satisfy
" the claim of Merrit, Jennings & Co. for the use of N. K.
" Kellum, assignee of H. G. Runnells, and purchased in by said
" Kellum with a full knowledge of all fraud and illegalities
" with which said order and sale were tinctured, and because
" said sale was the result of a fraudulent combination between
" T. B. J. Hadley and said Kellum, and because there was
" other and abundant unimproved landed property to pay said
' debt or demand, and for other defects, frauds and illegalities."

March 22, 1856, Kellum amends his answer by alleging that
the appellee and Hadley and wife had compromised and settled
all matters in controversy, and prays an abatement of the suit.

Excepts to the amended petition.

Pleads the former suit and settlement in Harris county in
bar.

Nov. 11th, 1856, plaintiff again amends and alleges " that
" the several orders of sale made and entered by the Probate
" Court in the course of the administration of the estate of
" Ben Fort Smith, deceased, to-wit : the order of sale made at
" the May Term of said Court, A. D., 1846, the order of sale of
" October Term, 1848," (Sulphur Spring Tract) " and the order
" of sale of June Term, 1850, were and are illegal, fraudulent,
" null and void, because he says that the Probate Court of
" Montgomery county had no jurisdiction of the subject matter
" embraced in said several orders of sale. Said Probate Court
" pretended to exercise jurisdiction in the premises in making
" said several orders of sale, without the executor or executrix

" or any creditor of said estate, or any other person having
" first filed a petition or petitions setting forth the amount of
" personal property that had come to the hands of the execu-
" trix, stating its value and kind," &c.

On the 11th of November, 1856, appellee excepted to Kel-
lum's claim for improvements.

On the 13th of November, 1856, the case being called, no
defendant appeared except Kellum. The attorneys of Hadley
and wife had withdrawn on the 22d of March, 1856. The
Court overruled all exceptions on both sides, except in an un-
important particular.

Same day Kellum amended, claiming to be protected, under
the settlement or compromise between the appellee and Hadley
and wife as residuary legatees.

At the trial on the facts Kellum was again the only defend-
ant that made his appearance.

Issues were submitted covering all the allegations, except as
to the slaves that Hadley and wife got in the transaction with
McKinney. The issue as to Kellum's part was, Did N. K.
Kellum and T. B. J. Hadley fraudulently combine and act
together in making the sale and purchase of the Sulphur Spring
tract of land.

The issues and evidence in relation to the will and the
adoption are not important, in view of the opinion of this
Court.

The evidence respecting the sale was as follows :

H. G. Runnells, assignee of Merritt, Jennings & Co., after
a good deal of trouble and delay, obtained an order of the
County Court, at Oct. Term, 1848, for the sale of property to
satisfy a claim which he held against the estate amounting to
$2875 42. The first property on the list ordered to be sold,
was the Sulphur Spring property, containing two-thirds and
one-fourth of a league. Then followed other tracts in different
counties, amounting to 4612 acres ; also eight leagues part of
two eleven league grants situated on Little River ; and a cer-

tificate for two-thirds of a league.  Runnels was the brother of Mrs. Hadley, and uncle of the plaintiff in this suit.  On the day before, or on the day of the sale, Runnels sold his claim to N. K. Kellum, the appellant, for $2000, fearing, as he testified, that he might still have further difficulty in the collection of the debt.  The sale was duly advertised, returned the Sulphur Spring tract, as sold to N. K. Kellum for $2875 42, which paid the debt ; sale confirmed by the Court, and deed made to Kellum, who went into possession immediately and commenced to make valuable improvements.

Peter J. Willis, a witness for the plaintiff, testified as follows :  Remembers a sale made by Hadley, as executor of Smith, when the Sulphur Spring property was sold ; the evening before the sale heard a communication between Kellum and Hadley about the sale ; Kellum said he had come with the intention to buy the Springs, and that he expected to pay for it with a claim or judgment he had against the estate.  The next morning Hadley spoke to me about the sale, and requested me to bid for it ;  Kellum was not present ;  spoke of it as a valuable property.  I told him I did not want the property and had no use for it ;  I think, but am not positive, that he said there would be no danger of its being knocked off to me.  Both parties told me that Kellum had come with the intention of buying ;  was present at the sale ;  don't remember who cried the sale ;  there were several present, and Kellum amongst others.  Hadley's reason for asking me to bid, was that there would be no other bidder but Kellum ;  don't remember his saying anything about the legality of the sale.  Kellum resided at that time, in Houston;  he and Hadley and Gov. Runnels came together the evening before, and I think they went away together ;  know of no other business Kellum had here, except to attend the sale ;  understood from him and Hadley that was his business ;  Kellum told me that it was an unthoughted thing in him, buying the claim ;  that he had bought the claim same day or day before he started up.

Cross-examined : Have attended many probate sales in this county ; my opinion, at the time, was that the property sold cheap ; it was a public sale made at the usual hour, at the Courthouse door ; I think there was another bid besides Kellum's. I know nothing about the place, except from reputation ; have seen sales which I thought as great sacrifices as that.

Re-examined : Don't remember who bid besides Kellum ; think there was only one other ; don't remember the amount.

James H. Mitchell, witness for plaintiff : Knows of the sale of Sulphur Springs ; McCown and myself were going to buy them, and, at McCown's request, I spoke to Hadley about the title. He advised me not to buy as the title was not good, but requested me and Mr. Lacy to bid at the sale. The object, as I understood, was to make the sale good. He said that Kellum would buy the property. I made a bid, and so did Lacy. I bid at the request of Hadley ; don't remember whether others bid or not ; my bid was within the amount of Kellum's claim, and over $2000 ; I had been on the land and thought part of it good. The reputation of the Springs was high. I valued the property at $7000 to $10,000 at that time. McCown and I had concluded to buy at the sale, but gave it up after speaking to Hadley.

Cross-examined : Kellum was not present and did not hear our conversaiion. I bid at the request of Hadley with no intention of buying for myself. I understood he wanted me to bid, so as to make the sale valid. McCown and myself had come to no conclusion how much we would give for the property.

Re-examined. Did not bid on my own account but at Hadley's request ; should not have considered myself bound, if the bid had been knocked off to me.

It appeared from the proceedings in the County Court and copies of proceedings in other suits, which were in evidence, that it had been the policy of Hadley to interpose all obstacles

in his power to defeat the sale of property of the estate ; to delay the collection of claims, and to effect compromises ; and when driven to that extremity where property had to be sold, to make some arrangement by which the property or some part of it, would be purchased in and put in his own name, or in the name of his wife ; as they both stated upon oath in the Harris county suit, for the mutual benefit of both the residuary legatees. In this manner considerable property was saved from an estate, which, if promptly administered, would have proved insolvent.

The evidence of the plaintiff extended to all the acts of maladministration by Hadley, who acted for his wife, in the administration of the estate.

The defendant introduced evidence as to the value of improvements made by him, and proved by several witnesses that the land was worth from one dollar to a dollar and a-half, without the improvements ; and some of the witnesses said, without estimating the value of the spring. Some of the witnesses spoke of the present value ; others of its value at the time of the sale.

On the cross-examination of one of the plaintiff's witnesses, who was the attorney of the plaintiff in the Harris county suit, defendant Kellum endeavored to prove the terms of the settlement of that suit. Witness testified that the settlement did not embrace the matters in controversy in this suit, and that it was a *sine qua non* of said settlement that it should not affect this suit. It appeared from some proceedings in former suits, which were in evidence, that the title to the portion of the Sulphur Spring property on which the spring is, was liable to dispute ; and there was nothing to show that such liability to dispute did not exist at the time of the sale to Kellum. Runnells, Hadley and Kellum, all resided at Houston at the time of the sale. Runnells had been upon the Sulphur Spring property in the life time of Ben Fort Smith, when said Smith resided there. A witness for plaintiff, on cross-examination,

being asked where Hadley was at the time of the trial, said
he did not know, but had heard he had gone to Lavaca.

The Judge instructed the jury without request, as follows,
on the issue of fraud :

Fraud is defined to be any act, omission or concealment,
which involves a breach of legal duty, trust or confidence,
justly reposed and is injurious to another, or by which an un-
due and unconscientious advantage is taken of another ; and it
may be collected and inferred from the nature and circum-
stances of the transaction, in which it is alleged as being an
imposition or an advantage taken of other persons not parties
to it.   The evidence to establish such a transaction need not
be direct and positive ; but the circumstances must be such as
to satisfy you that the parties charged with fraud, were both
involved in it; acts, indicating fraud in one of them, do not
bind the other, unless the evidence shows that such others
knew of them, or that they were done to carry out or effect
common purpose or design between them.   If then, from the
evidence, you believe that the defendant Hadley had an under-
standing, or an agreement with Kellum, beforehand, that he
should become the purchaser of the spring property for less
than its value, then Kellum is responsible for any act or con-
duct of Hadley, having that object in view ; or if Kellum
was present or had knowledge of any acts or conduct of Had-
ley, calculated to depreciate the value of the property to be
sold, or to cause it to sell for less than its real value, and
he did purchase it for much less than it was worth or would
otherwise have sold for, then you will find for plaintiff on the
issue of fraud, but otherwise for defendant Kellum.

As to the acts or conduct of a party likely to affect the sale
injuriously and make it fraudulent ; if from the evidence Had-
ley held out the idea to others that Kellum would buy, and
that there was no use in their bidding, or advised others not
to bid, who otherwise would have become bidders, or depre-
ciated the title in any way, and those facts were known to

Kellum, or done in pursuance of an understanding between him and Hadley, then find for plaintiff on the issue of fraud, otherwise for defendant.

Proof of Hadley's fraudulent or illegal conduct in other sales is not legal or sufficient proof to establish fraud against Kellum in the sale to him, and, in order to show an understanding betweem them as to the sale, facts should be proved manifesting or indicating a common motive or interest to effect the object; alleged suspicions, or surmises, based on facts innocent in themselves, or from which a conclusion of fair dealing and honest purpose can be as easily or as readily drawn as an unfair or fraudulent one, are not sufficient to sustain a charge of fraud.

The following instructions were given at the request of defendant Kellum :

1st. The presumption is that every transaction is fair and in good faith, until the contrary is proved.

2d. It devolves upon the party charging fraud to prove it.

3d. No conversation between Hadley and other persons, in relation to the contemplated sale, can affect Kellum, unless the conversation was in his presence.

4th. However fraudulent may have been the conduct of Hadley, if such was the fact, it would not affect Kellum, unless he was party to such conduct.

Verdict for the plaintiff on the leading issues. Judgment setting aside the will, and declaring the plaintiff sole heir of Ben Fort Smith by adoption ; specific decree against McKinney and Kellum, but none against Hadley and wife, except for a certificate for a third of a league of land, which Hadley had purchased at one of the sales. Motion by Kellum for new trial overruled. Appeal by Kellum alone.


*A. M. Branch, O. C. & R. K. Hartley,* and *A. P. Thompson,* for appellant.

Kellum v. Smith.

*C. W. Buckley*, *B. F. Tankersley*, and *A. P. Wiley*, for appellee.

WHEELER, J. We do not deem it necessary to the decision of this appeal, to consider, with the view definitively to ascertain and determine, all the questions comprehended by the very able and instructive arguments of counsel. Our view of the case will not require a final opinion on the question of the validity of the will, or the right of the plaintiff to bring its validity in question in this case. We incline to the opinion that the act of adoption was effectual to constitute the plaintiff the legal heir of the deceased Smith ; if not by force of the joint resolution itself, by virtue of that and the acts of the deceased under it and in pursuance of it. It will suffice for the present, and, perhaps, for the final decision of this case, to say, upon this subject, we are of opinion that the plaintiff has an interest in the estate, either by virtue of the will, or the act of adoption, which entitles him to sue for property not legally disposed of in the administration of the estate. But what the precise extent of that interest is, it is not necessary, at present, to decide ; for whatever it be, we think it clear beyond question, that it was divested, as to the property here in question, by the sale of the 3d of April, 1849 ; unless there was fraud in the sale, affecting the title of the purchaser ; and that is the material inquiry to be determined in this case.

It is to be observed that the gravamen of the complaint, as the plaintiff represented his case, consisted in the charges of illegality and fraud on the part of the defendants, Hadley and wife, in obtaining and executing the various orders of sale of the property of the estate. In respect to the land in question, it is averred that the sale was made contrary to law, because it was for the improved land of the estate, before disposing of the unimproved land ; and was made to pay a specific debt, when it should have been made to pay creditors generally ;

because made without exhibiting a schedule of the debts of the estate; because sold to pay the debt of Merritt, Jennings & Co., for the use of Kellum, assignee of Runnells, and purchased in by Kellum with a full knowledge of the fraud and illegalities with which the sail was tinctured; " and because said sale was the result of a fraudulent combination between T. B. J. Hadley and said Kellum," and because there was unimproved land, &c. The charge of combination was the ground of the sixth issue submitted to the jury, upon which the decision of the case finally turned.

From the averments of the petition it would seem that Hadley was regarded as the principal offender against the rights of the plaintiff, and that it was by the numerous acts of maladministration charged against him, that the plaintiff was principally agrieved. But Hadley and the plaintiff having, it seems, amicably settled the matters in litigation between them, his counsel were instructed to withdraw from the defence of the case, and the plaintiff was thereby enabled to introduce evidence reflecting upon the conduct of Hadley *ad libitum*, without any attempt or offer on his part at explanation. The manifest effect, if not the intention of this was, to enable the plaintiff to make out a case of great apparent wrong on the part of Hadley, to operate to the prejudice of the appellant. Hadley, if he had seen proper, might, perhaps, have explained satisfactorily, his conduct. But if he did so, that would acquit his co-defendant, and defeat the action; which, by agreement of the parties, was not to be affected by their compromise; and he did not explain, or attempt any vindication or defence of his conduct in the matter of the administration. The plaintiff was permitted to prove conduct supposed to be grossly fraudulent on his part, and apparently so, unexplained; and the conclusion was then very naturally and easily drawn that all who had dealt with him in respect to the matters complained of had participated in his designs, and must be equally culpable.

The case certainly took a very singular direction, and presented a novel appearance on the final trial.

We need not remark further on the conduct of the cause. It will suffice for its disposition, that to authorize the annulling of the appellant's title, there must have been proof of the alleged fraudulent combination ; the evidence must implicate him in a participancy in the alleged fraud.    What is the evidence relied on for this purpose ?    Runnells had obtained an order for the sale of the property to pay a judgment he had recovered against the estate ; Kellum bought it ; attended the sale ; made known beforehand his intention to purchase the property ; and did so, being the highest and best bidder, at twenty-eight hundred and seventy-five dollars, the amount of his claim.    This, in short, is all the evidence discloses of the conduct of Kellum in respect to the sale and purchase of the property.    And there certainly was nothing wrong in this. But, it is s aid, he traveled with Hadley and Runnells from Houston, where they resided, to Montgomery, to attend the sale, and told the witness, Willis, in the presence of Hadley, that he came with the intention of buying the property, and how he expected to pay for it.    Surely there was nothing improper in that.    Doubtless he did come with that intention; and it is very likely that Hadley not only knew he was coming for that purpose, but desired and encouraged him to come and purchase the property in order to insure the sale of it for a sufficient price to satisfy the claim against the estate.    But it is said he told an untruth to Willis as to the time when he purchased of Runnells the claim ; that he stated that he bought it before leaving Houston : whereas Runnells says he sold it to him the evening before the sale of the property.    It was certainly wrong to tell an untruth ; but it is not perceived that the time when he purchased the claim, whether before or after he left Houston, was a matter of the least consequence or materiality ; or that his statement, whether true or false in that particular, could have any, even the remotest bearing upon the

question of a fraudulent combination to purchase the property for less than its value. The probable explanation is, that he was in negotiation for the purchase of the claim before he left Houston ; and that it was closed after they reached Montgomery. It is not very likely that he would have attended the sale at such a distance, to purchase the property with this claim, if he had not had some understanding with Runnells as to the purchase of it before he started. But whether he had or not, or whether he stated the truth to the witness or not, as to the time of the purchase, could have nothing to do with the question at issue. The only circumstance which could excite a suspicion of the fairness of the conduct of either Hadley or Kellum, was the advice of the latter to the witness, Mitchell, not to purchase, as the title was not good. But this advice was not volunteered by Hadley. It was drawn from him by the witness, who appled to him for information ; and the evidence would scarcely warrant the conclusion that he did not state what he believed to be true. Runnells, the evidence shows, must have had considerable knowledge of the condition of the estate. He had an order for the sale of this, together with other property to satisfy his claim ; and if there was no doubt of the goodness of the title, and the property was really so valuable as the witness Mitchell supposed, it is passing strange that instead of bidding off the property himself, he should, upon the very eve of the sale, have consented to take for his claim nearly a third less than its value. But with whatever intention the statement was made, it cannot affect Kellum, who was not present, and is not shown to have had any knowledge of it. It appears to have been a strictly private communication, made to a person who was sent to consult Hadley on the subject ; and there is no reason to suppose that it was known to Kellum. Clearly he cannot be affected by it. Upon the whole evidence there does not appear to be any good ground to impeach the honesty of Hadley in this matter. He tried to induce persons to bid for the property. Mitchell

understood his object to be to make the sale good; but that does not appear to have been the understanding of Willis. He says Hadley told him it was a valuable property; and assigned as a reason for asking him to bid, that there would be no other bidder but Kellum. He declined to bid because he did not want to purchase the property. The natural inference, upon the whole, is that Hadley's object in getting others to bid, was to compel Kellum to bid the full amount of his claim; which he probably supposed was more than any one else would give.

It would be a useless consumption of time to protract the discussion of the evidence relied on to make out the charge of combination and fraud. There is not only the absence of any evidence of fraud, but of any motive on the part of Hadley to defraud the estate. There is nothing in the conduct of Kellum to excite even a suspicion of fraud. And if there were circumstances of mere suspicion leading to no certain results, the Court very properly instructed the jury that such mere suspicions cannot be deemed sufficient ground to establish a charge of fraud. (1 Story Eq. Sec. 190; 1 Hovenden on Frauds, 24.) Most of the witnesses who testified touching the value of the property, spoke of its value at the time of the trial, and not of the sale. The evidence upon that subject, therefore, is not satisfactory. But it is evident there was not such gross inadequacy of price as to amount to any evidence of fraud. The evidence is deemed so manifestly insufficient to support the verdict upon the sixth issue, on which the decision of the case of the appellant turned, as to render an extended examination of the other questions in the case quite superfluous. There can be no more satisfactory ground for setting aside contracts, or vacating the most solemn acts and judgments of Courts, than fraud, where it is established by proof; but there could be no more dangerous doctrine, than that which would recognize a right in juries to deduce the conclusion of fraud without competent evidence. There would in-

deed be cause of alarm, if any man's title to his property were liable to be annulled upon evidence such as the record in this case discloses, as affecting the appellant. Men would have to be very careful in whose company they traveled, and how they ventured to speak of the legitimate business in which they were engaged. The utmost circumspection would scarcely afford them security, if they should be unable at all times to explain, not only their own conduct, but that of the persons with whom they dealt.

We are of opinion that the verdict was contrary to the evidence, and that the Court erred in refusing a new trial ; for which the judgment must be reversed and the cause remanded.

Reversed and remanded.