Argued May 4, decided June 14, 1910.

# BURKE *v.* HINDMAN.

[109 Pac. 380.]

APPEAL AND ERROR—FINDINGS—CONCLUSIVENESS.

1. The findings of the trial judge on conflicting evidence, heard in open court, are entitled to weight on appeal.

MORTGAGES—ASSIGNMENT—VALIDITY—FRAUDULENT REPRESENTATIONS.

2. A representation by the president of a corporation that a third person had contracted with the corporation for the purchase of its land for $8,000, paying $3,000 cash, balance secured by mortgage on the premises, made to induce another to purchase the mortgage, is a material representation on which he may rely, though he visited the land and informed the president that he could not tell from an inspection thereof the value of the land.

MORTGAGES—FORECLOSURE—EXISTENCE OF OTHER REMEDY—FRAUD.

3. The president of a corporation and one of the stockholders thereof conspired to induce plaintiff by means of fraud to purchase a mortgage on real estate. It was represented to plaintiff that the stockholder had contracted to purchase the real estate for $8,000, paying $3,000 in cash, and giving a mortgage of the premises for the balance. The corporation conveyed the land to the stockholder in pursuance of the conspiracy, and plaintiff purchased the mortgage receiving an assignment "without recourse." The transaction between the corporation and the stockholder was solely for the purpose of enabling the corporation to secure the value of the mortgage for its own purposes. The land was not worth more than $3,200. Immediately after the purchase of the mortgage by plaintiff, the stockholder reconveyed the property to the corporation. *Held,* that since the corporation received the benefit of the fraud, equity would treat the transaction as a loan to it, and plaintiff could sue the corporation to foreclose the mortgage and for a deficiency judgment against it, instead of suing for the fraud.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit by Thomas C. Burke against Parilee F. Hindman and M. J. Hindman, her husband, and the Hot Springs Company, a corporation, to foreclose a mortgage on certain real property situated in Baker County. The complaint, which is too voluminous to be incorporated in this statement, alleges, in substance, that Dr. W. J. May is president of the defendant corporation, the Hot Springs Company; that about September 1, 1906, acting on behalf of the company, he represented that the lands described in plaintiff's mortgage were owned by the com-

Sig. 18

pany; that they were of the value of $8,000; that the company had contracted with defendant Parilee F. Hindman to sell and convey the lands to her for $8,000; that $3,000 were to be paid by her upon the execution of the deed, and the remaining $5,000 to be secured by her mortgage upon the premises; that May, acting for the company, offered to sell and assign to plaintiff and requested plaintiff to purchase the notes and mortgage when delivered; that P. F. Hindman stated and represented to plaintiff that she had contracted to purchase the land upon the terms above stated, and that she would pay the promissory notes when due; that plaintiff, relying on these representations, and believing them to be true, agreed with defendant corporation to purchase the notes and mortgage; that on September 22, 1906, defendant corporation executed and delivered to defendant P. F. Hindman an instrument, purporting to be a deed to the land in question, for an alleged consideration of $8,000; that the same was duly recorded on the 25th of the same month; that on September 22d defendant P. F. Hindman executed four promissory notes, aggregating in all $5,000, payable respectively in two, three, four, and five years after date, bearing 7 per cent interest, conditioned for reasonable attorney fees, in case of suit, and secured by a mortgage upon the lands in question; that plaintiff believed that such transactions between defendants were *bona fide,* and that they were in accordance with and in pursuance of the contract and agreements, as represented and stated to him by the defendants; that he believed all of such instruments were what they purported to be, and, in reliance thereon and in pursuance of the agreement theretofore made with May on behalf of the company, he did, at the date last named, purchase from the Hot Springs Company the notes and mortgages for the sum of $4,500, which the company secured and appropriated; that the company, through its president and manager, May, there-

upon indorsed the notes to plaintiff "without recourse," and executed to him an assignment of the mortgage, and, at the same date, for the purpose of compensating plaintiff for procuring the money, he assigned and indorsed to plaintiff 3,000 shares of the capital stock of the company, which were and are of merely nominal value. The complaint then alleges that Mrs. Hindman and Dr. May made false representations; that Mrs. Hindman did not purchase the land in question from defendant corporation; that she did not pay the corporation the sum of $3,000 or any sum as part of the purchase price or otherwise, and did not, at any time, intend to pay the promissory notes or any part of them; but that the pretended purchase was made pursuant to a collusive and fraudulent agreement between defendant corporation and Hindman to deceive plaintiff and induce him to believe that the lands were of the value of $8,000, and thereby to induce him to pay the $4,500, for the mortgage, and that thereafter defendant Hindman intended to abandon the lands and not to pay the notes or any taxes on the lands; that, immediately after the execution of the notes and mortgage, defendant Hindman executed a deed re-conveying the lands to the defendant corporation, which then and there returned to her a $3,000 unsecured note, which she had given as part of the pretended purchase price of the land, and released her from all liability on such pretended debt; that Mrs. Hindman never had any interest in the lands, except to enable defendant corporation to deceive plaintiff as aforesaid; and that the corporation has always been the real owner thereof. Plaintiff alleges a tender to defendants of the stock held by him, and asked that the mortgage be treated as the mortgage of the defendant corporation and be foreclosed, and that he have a deficiency judgment against the corporation for any sum that might remain due after sale of the mortgaged premises.

The answer put in issue all the material matters alleged as to the fraudulent character of the transaction. The court below found in favor of plaintiff, and from that decree defendants appeal.        AFFIRMED.

For appellants there was a brief over the names of *Mr. John L. Rand* and *Messrs. Hart & Nichols,* with oral arguments by *Mr. Rand* and *Mr. Julius N. Hart.*

For respondent there was a brief and oral arguments by *Mr. Charles P. Murphy* and *Mr. Gustav Anderson.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

For the sake of brevity, we have given only an outline of the pleadings in this case, and, as the decision depends largely upon questions of fact, a discussion in detail of the evidence would not be of any permanent value or of any interest to any one outside of the interested parties. This case was tried before the judge below in open court, and his opportunity of estimating the value of the evidence of the various witnesses was superior to ours, and while, upon our own examination of the evidence, we should feel impelled to take the same view of the facts that he reached, yet his opinion, formed from actual hearing of the testimony, is not without weight.

1. We think plaintiff has established these facts: (1) That the land in controversy was not, at the time of the execution of the mortgage, worth more than $3,200; (2) that defendants knew this to be the fact; (3) that plaintiff was ignorant of its true value; (4) that May deliberately deceived plaintiff as to its value, by representing that Mrs. Hindman, who had formerly owned it, wished to repurchase it for $8,000 and to pay $3,000 cash and give a mortgage for the balance; (5) that the deed from the Hot Springs Company to Mrs. Hindman for the alleged land was in pursuance of a conspiracy to induce plaintiff to advance the money on the

mortgage and to avoid the responsibility of giving a mortgage upon a direct loan from plaintiff to the Hot Springs Company; (6) that the transaction between defendant corporation and Mrs. Hindman, in giving her a conveyance and taking the notes and mortgage, was solely for the purpose of enabling the Hot Springs Company to secure $4,500 for its own purposes; (7) that plaintiff's estimate of the value of the notes and mortgage was based largely upon the assumption that Mrs. Hindman, who was familiar with the land and its capabilities, was apparently willing to pay $3,000 in cash and give a mortgage for $5,000 in order to secure it; (8) that if plaintiff had known that she did not intend to make the purchase in good faith and was not, in fact, paying anything, but was merely acting as a decoy to enable the company to induce plaintiff to advance $4,500 to be used for the benefit of the corporation, he would not have purchased the notes and mortgage.

2. With this view of the facts, we are of the opinion that the decision of the circuit court should be affirmed. It is true that plaintiff, at the request of Dr. May, drove with him to the land and looked it over; but he testifies that this was the first time he ever visited it, and that he told May, at the time, that he could not tell from the inspection made whether it was worth $10 or $50 an acre. He was a mining man, not a farmer or stock raiser, and it is evident that he was relying upon the supposed fact that persons familiar with the property were willing to risk $3,000 as a first payment in addition to giving a mortgage on the property. This pretended payment was, no doubt, an evidence of the good faith of the purchaser and an indication that the mortgage notes would be paid at maturity. These false statements of defendants were in respect to a material fact bearing upon the probable value of the security which plaintiff was asked to purchase. We are satisfied that the whole transaction was

brought about as the result of a conspiracy between Dr. May and Mrs. Hindman, who was a stockholder in the defendant corporation, to fraudulently induce plaintiff to advance $4,500 for its sole benefit. Having received that benefit, equity ought to treat the transaction as a loan to the defendant corporation, the real recipient of the money.

3. Nor do we think that plaintiff was bound to return the notes and mortgage and reply upon an action for deceit. To have done this would have probably jeopardized his chance of obtaining any relief whatever. This is not a case of recission of a contract on account of the fact that the mortgage is void. It is valid and the notes are valid; but the security is inadequate, and by reason of such inadequacy, and the fraudulent acts of defendant, plaintiff has been falsely induced to advance to the defendant corporation, and for its benefit, more money than the security will repay. While, upon the fact of it, it appears to be a mortgage, primarily to secure a debt from Mrs. Hindman to defendant corporation, it is, in fact, a mortgage procured by defendant corporation upon its own property for the purpose of obtaining money for its own benefit. Equity will look beyond the devices used to cover the real nature of the transaction and treat it as it really is.

The decree of the lower court is affirmed.

AFFIRMED.