## YOUNG et al. v. TERRACE IMPROVEMENT CO.

No. 2866.

Court of Civil Appeals of Texas. El Paso.
July 7, 1933.

Rehearing Denied July 13, 1933.

Edward C. Wade, Jr., Ira C. Young, and Joseph McGill, all of El Paso, for appellants.

J. H. McBroom, R. J. Channell, W. O. Hamilton, Jones, Goldstein, Hardie & Grambling, and Turney, Burges, Culwell & Pollard, all of El Paso, for appellee.

PELPHREY, Chief Justice.

On December 2, 1929, the Terrace Improvement Company, a corporation, executed two notes payable to the First National Bank of El Paso, Tex. One note was for $50,000 and the other for $70,000. Both notes were due one year from date. On July 19, 1930, said company executed a series of 120 first mortgage real estate bonds, each of the bonds reading:

"$1,000.00

"First Mortgage Real Estate Bond Negotiated
By Mortgage Investment Company of
El Paso, Texas.

"El Paso, Texas, July 19th, 1930.

"On the 19th day of July, 1935, for value received, I, we, or either of us, promise to

pay to the order of Mortgage Investment Company of El Paso, Texas, in gold coin of the present standard of weight and fineness as fixed by the laws of the United States of America now in force, the sum of One Thousand and no/100 Dollars, with interest thereon at the rate of seven (7) per cent per annum from date hereof until maturity and thereafter at rate of 10% per annum until paid; interest to maturity payable semi-annually according to the tenor of Ten (10) interest coupons hereto attached, of even date herewith, each for sum of Thirty-Five and no/100 Dollars, principal and interest payable at the office of the Mortgage Investment Company of El Paso, Texas, in El Paso, Texas, or at such other place as the legal holder thereof may, from time to time, in writing appoint, all interest to bear interest at the rate of 10% per annum from maturity until paid. A failure to pay this bond or any bond of this series or any installment of interest thereon when due shall at the election of the holder of them or any of them, mature the entire principal obligation. If this obligation should be placed in the hands of an attorney for collection or in case of legal proceedings for collection or collection through probate, or bankruptcy, I, we, or either of us, promise to pay an additional sum of 10% on amount of principal and interest unpaid as attorney's fees. This Bond and coupons are secured by Deed of Trust lien on the following described property situated in El Paso County, Texas, to-wit:

"Various parcels of real estate fully described in Deed of Trust dated July 19, 1930, from Terrace Improvement Company to the First National Bank of El Paso, Texas, Trustee for Mortgage Investment Company of El Paso, Texas.
    "Terrace Improvement Company
        "By J. E. Benton, Vice-President.
"Attest:
    "C. Scarborough, Secretary.
"[Seal]."

On the reverse side of each bond appeared the following:

"For value received, the Mortgage Investment Company of El Paso, Texas, hereby assigns and transfers this obligation together with interest coupons hereto attached to —————— or order, without recourse, —————— together with all its interest in and right under the lien securing the same.
        "Mortgage Investment Company of
                El Paso, Texas.
    "By [signed]  M. E. DeBord,
                        Ass't Secy.
"Dated, July 19, 1930."

In the latter part of July or the first part of August, 1930, the bonds were placed in the First National Bank, and $55,000 worth of them sold to different persons.

On November 18, 1930, the proceeds from the different sales was applied to the payment of the $50,000 note and $5,000 on the $70,000 note; at least this appears from the testimony of Mr. Barrough to have been the way the matter was handled by the bank.

It also appears that the bank later sold an additional $5,000 worth of said bonds.

On September 4, 1931, the bank was placed in the hands of S. O. Pottorff, receiver.

This suit was instituted by Louise S. Young and others, the owners and holders of $27,000 worth of said bonds, against the Terrace Improvement Company, S. O. Pottorff, as receiver of the First National Bank, and others, as defendants to foreclose the deed of trust lien. The receiver was made a party to the suit under the allegation that he was asserting some right, title, or interest in, or lien upon, the property.

The receiver, by answer and cross-action, showed himself to be the holder and owner, as such receiver, of $60.000 worth of said bonds. In a separate petition he prayed for a foreclosure of the deed of trust lien, a sale of the property, and a distribution of the proceeds pro ratably among all the owners of the bonds. Nellie C. O'Boyle Gemoets and Martin J. O'Boyle, Jr., independent executrix, and executor, of the estate of Martin J. O'Boyle, deceased, were made parties defendant. They filed an answer and cross-action alleging ownership of $6,000 worth of the bonds, and prayed for a foreclosure of the deed of trust lien and for satisfaction of their bonds from the proceeds of a sale of the property before those held by the receiver.

In their first trial amendment, plaintiffs admitted that the bonds held by the executrix and executor were entitled to share in the proceeds of a sale of the property pro rata with them.

Plaintiffs in their second amended original petition and their first trial amendment alleged that the bank had been guilty of fraud: (1) In failing to disclose to plaintiffs that the Terrace Improvement Company had forfeited its right to do business in Texas; (2) in failing to disclose that it was the owner of the notes, or had a pecuniary interest therein; (3) that it expressly or impliedly falsely represented that the bonds were adequately secured; and (4) that it expressly represented that it had bought the bonds for plaintiffs when in fact it was selling them its own bonds, and that, by reason of such misrepresentation, fraud, and concealment, the lien securing the bonds in the hands of the receiver should be subordinated to the lien securing the bonds of plaintiffs. The executrix and executor made similar allegations, and prayed for the same relief.

The trial court instructed the jury to return a verdict establishing the lien securing the payment of the entire series of bonds as being on an equality, and directing that the

proceeds of a sale of the property be divided among the parties to the suit in proportion to the amount of their respective debts.

From the judgment entered upon such verdict, the original plaintiffs and the executrix and executor have appealed.

## Opinion.

The controlling question presented, as we understand it, is whether appellants, by showing fraud on the part of the bank in connection with the sale of the bonds to them, or by showing that the bank paid no consideration for the bonds, are entitled to have the lien secured by the bonds in the hands of the receiver subordinated to their lien.'

Appellees, in reply to the contention of appellants, assert that under the decisions of this state a person who has been defrauded has two, and only two, remedies, viz., a rem-. edy at ·law to stand by his bargain and sue for damages, or a remedy in equity to rescind the contract, return the thing purchased, and recover back what he has paid. That the trial court concurred with this view is indicated. by the concluding paragraph of the judgment rendered. It reads: "It is further Ordered, Adjudged and Decreed that the above and foregoing action of the court in instructing a verdict and in adjudging that the liens securing the series of notes executed by the Terrace Improvement Company, totalling $120,000.00 and sued on in the above entitled cause, shall be and are on a parity, and the entry of this Judgment and Decree upon said verdict shall be without prejudice to the rights of the Plaintiffs and Cross-Plaintiffs, Nellie C. O'Boyle Gemoets and Martin J. O'Boyle, Jr., independent Executrix and Executor of the Estate of Martin J. O'Boyle, deceased, to file and prosecute actions for damages in any Court of competent jurisdiction against the First National Bank of El Paso, Texas, or the Receiver thereof, on the ground of fraud or misrepresentations, if any in connection with the sale of said notes to the said Plaintiffs and said Cross-Plaintiffs."

If this were an action against the receiver of the bank, we would be forced to admit the soundness of appellees' above proposition, but, in the case before us, appellants are seeking no recovery against the receiver, but are merely attempting to foreclose the lien secured by the bonds sold to them by ·the bank, and, when the receiver comes into the suit seeking a foreclosure of the lien secured by the bonds owned by the bank, appellants interpose an objection to that lien being placed on a parity with their lien, because, as they allege, the bank by failing to make certain disclosures which it was their duty to make, and by making certain false representations, caused appellants to purchase said bonds, and but for which they would not have purchased. As to the effect of fraud on the priorities of liens, we find the following statement in Pomeroy's Equity Jurisprudence, § 686, p. 1194: "The equity acquired by a party who has been misled is superior to the interest in the subject-matter of the one who willfully procured or suffered him to be thus misled. * * * The basis of this rule is the conduct which equity regards as constituting fraud, either an actual intention to mislead, or that gross negligence which produces all the effects and merits all the blame of intentional deception. It is not, however, necessary that the party having an interest or title, under such circumstances, when applied to, should use positive misrepresentations or expressly deny the existence of his right; it is sufficient if he refrain from disclosing his· claim, and suffer a third person to deal with the property as his own, or to acquire an interest in or a lien upon it; he will not be permitted to set up or enforce his interest in preference to that obtained by the person whom he has· suffered to be misled by his silence."

While it is true that the example given by the author does not reveal a state of facts such as we have here, yet he, in giving the example, further said: "The following example illustrates the operation of this rule, and the principle underlying it may be generalized and applied to all analogous cases."

Again, in section 716, p. 1259, the author says: "It will be remembered that among 'equitable interest only in the same subject-matter, otherwise equal, the order of time controls; that between two or more equities, one may be intrinsically superior in its nature, and thus entitled to the precedence; that between an equitable title and a legal title in the same thing, the latter generally prevails; and finally, the priority resulting from order of time merely, or that resulting from the superior nature of the equity itself, or that belonging to a legal title, may be postponed or defeated in various manners and by various incidents, among which the most important are, notice given to or fraud or negligence of the holder of the interest which would otherwise have been preferred."

Again he says: "It is therefore a settled doctrine, that among successive equities otherwise equal, and also between a legal title or superior equitable interest earlier in time and a subsequent equity, the holder of the interest which is prior in time and should be prior in right may lose his precedence, and be postponed to the subsequent one by his own fraud or negligence, or that of his agent."

Again we find Mr. Adams in his Doctrine of Equity on pages 147 to 151 saying:

"The rule of priority which governs transfers and charges of a legal estate, governs also, in the absence of a special equity, transfers and charges of an equitable interest. But if legal and equitable titles conflict, or if, in the absence of a legal title, there is a

perfect equitable title by conveyance on the one hand, and an imperfect one by contract on the other, a new principle is introduced, and priority is given to the legal title, or, if there is no legal title, to the perfect equitable one. This doctrine is embodied in the maxim, that 'between equal equities the law will prevail.'

"In order, however, that this maxim may operate, it is essential that the equities be equal. If they are unequal, the superior. equity will prevail; and such superiority may be acquired under any of the three following rules:

"1: The equity under a trust or a contract in rem, is superior to that of a voluntary gift, or under a lien by judgment.

"2: The equity of a party who has been misled, is superior to his who has willfully misled him.

"3: A party taking with notice of an equity, takes subject to that equity, * * * The second rule of superior equity is, that 'the equity of a party who has been misled, is superior to his who has misled him.'

"This rule is, in fact, merely a specific application of the general doctrine with respect to fraud, where the fraud complained of is a representation, express or implied, false within the knowledge of the party making it. * * *

"In order to the introduction of this equity it is essential that there be intentional deceit in the defendant, or at all events, that degree of gross negligence which amounts to evidence of an intent to deceive. If, therefore, the party standing by be ignorant of his right, or if he has been merely careless or negligent; e. g., where a mortgagee or trustee, by not taking the title deeds, or by subsequently parting with them, has enabled the mortgagor or cestui que trust to commit a fraud, the mere circumstances of his having done so will not warrant relief against him. *It may, however, exclude him from equitable aid as against a subsequent purchaser or mortgagee.*"

■ The above authorities, we think, clearly show that courts of equity may in cases where liens are otherwise on a parity postpone the lien held by one who has been guilty of fraud and give priority to the other holder that he committed the fraud upon.

These same authorities discuss in their proper places the remedies of rescission and of suing for damages for fraud, but, in addition thereto, recognize the right to have the defrauding party's lien subordinated. We find this announcement on the question in 41 C. J. § 670, pp. 666, 667, in a discussion of the assignment of mortgages: "Where the consent to the assignment was procured by fraud, the assignment is voidable at the election of the injured party, but in order to be entitled to a rescission of the contract the defrauded assignee will be required to restore whatever property he received by virtue of the assignment, and where, he has voluntarily put it out of his power to make such restoration, he cannot have the transaction set aside. *On the other hand the defrauded assignee may elect to treat the assignment as valid, and have his rights adjusted in the foreclosure suit, without being put to the inconvenience of an action for deceit.*" (Italics ours.)

In support of the announcement, the cases of Hughesville Bank v. Fricke, 215 Mo. App. 614, 256 S. W. 1097, and Burke v. Hindman, 56 Or. 545, 550, 109 P. 380, are cited.

Lawson, Receiver, v. Warren, 34 Okl. 94, 124 P. 46, 42 L. R. A. (N. S.) 183, Ann. Cas. 1914C, 139, and Bush v. Froelich, 14 S. D. 62, 84 N. W. 230, also support the doctrine.

■ We have concluded that the right here sought to be enforced by appellant is one they are entitled to assert in an action to foreclose the lien, and that they are not limited to an action against the receiver for damages or rescission.

Appellants in their brief set out the fraud which they claim entitles them to a priority as consisting of: (1) Failure of the bank to disclose the fact that the Terrace Improvement Company had forfeited its right to do business in Texas; (2) failure to disclose that the bank was the owner of the bonds or had a pecuniary interest therein; (3) false representations express or implied, that the bonds were good bonds and adequately secured; and (4) false representations, expressly made, that the bank had bought the bonds for appellants when in fact it was selling them its own bonds.

■ Generally speaking, "fraud" is any act, omission, or concealment which involves a breach of legal duty or confidence, justly reposed, and injurious to another. Missouri, K. & T. Railway Co. of Texas v. Maples (Tex. Civ. App.) 162 S. W. 426 (error refused); Kellum v. Smith, 18 Tex. 835; Horton v. Smith (Tex. Civ. App.) 145 S. W. 1088.

■ The record here shows that the bank was acting in an advisory capacity as to investments for appellants, and that appellants were depending upon the bank for such advice. Under such a state of facts, it was clearly the duty of the officials of the bank to disclose any and all facts material to the investments recommended by them, and certainly it was their duty under the existing relation not to misrepresent such facts.

The next question arising is, Were appellants injured by such failures to disclose or by such misrepresentations?

■ If the bonds here were issued by the officers and directors of the Terrace Improvement Company after it had forfeited its right to do business in Texas, then the officers and

directors, knowing such fact, would be liable as partners. Article 7091, Revised Statutes. This being true, then appellants, as purchasers of such bonds, would be entitled, not only to look to all the assets of the corporation, but could also proceed against the officers and directors, one of whom, it appears from the record, was worth more than a million dollars at that time.

■ It follows, we think, that the fact that the bonds were issued after the Terrace Improvement Company had forfeited its right to do business in the state in no way impaired the value of the bonds, and therefore appellants were not injured by the bank's failure to disclose such fact.

■ Each of the bonds issued contained a recital that it was one of a series and referred to the deed of trust which was on record at the time appellants purchased.

Appellants therefore had knowledge that there were 120 bonds outstanding, and which were each and all secured by the property to which appellants were to look for their protection.

We fail to see how the value of the bonds purchased by appellants would be affected by the ownership of the other bonds of the series, and how they could have been injured by the fact that the bank was the owner of such bonds, rather than some other person.

■ There is testimony in the record to show that the officials of the bank both expressly and impliedly represented to appellants that the bonds were good bonds and adequately secured.

The record also reveals that the method used in the issuance and handling of the bonds was not in accord with the principles of good faith, honesty, and fair dealing. The Terrace Improvement Company was indebted to the First National Bank in the sum of $120,000, and the bank examiners were complaining; at this time J. S. Reynolds was chairman of the board of directors and J. E. Benton was vice president of the First National Bank; Reynolds was president and Benton vice president of the Terrace Improvement Company; the Terrace Improvement Company, by J. E. Benton, as vice president, then executed a deed of trust to the Mortgage Investment Company to secure the series of 120 bonds; the Terrace Improvement Company was not indebted to the Mortgage Investment Company, and the Mortgage Investment Company paid no consideration for the bonds issued to it; the bonds were indorsed without recourse by the Mortgage Investment Company and taken by the bank and sold to appellants and others, and the money received from such sales applied to the payment of the Terrace Improvement Company's indebtedness to the bank.

The whole transaction, in our opinion, shows an intention to mislead and an utter disregard of the rights of the investing public. The record also reveals that the security for the bonds issued was unimproved, nonproductive real estate, some of it acreage, and, from the evidence, there appears a conflict as to whether its value was sufficient security for the bonds issued.

It further appears that no provision was made in the deed for partial releases of the property from the lien created, and, as we understand the record, it was a practical impossibility for the interest to be paid by the Terrace Improvement Company as it became due.

Mr. Kemp appraised the property at $100,000, less than the amount of the bonds issued, which fact, if true, would certainly show that the bonds were not adequately secured as they were represented by the bank to be.

In view of the facts above, we are of the opinion that there were issues raised in the case which should have been submitted to the jury, and that the trial court was therefore in error in instructing a verdict for appellees.

The judgment is reversed and the cause remanded.

Justice HIGGINS was disqualified, and did not sit in this case.