G. C. POWELL ET AL. V. CARSON COUNTY ET AL.

Decided June 18, 1910.

**1.—Public Roads—Injunction.**

An injunction will lie to restrain the opening of a public road when there has been a failure to comply with the terms of the statute requiring previous notice to the owner of the land across which the road is to be established.

**2.—Same—Notice to Owner of Land—Contract of Sale—Owner.**

At the time proceedings were instituted to open a public road across a tract of land the owners had entered into a contract to sell the same, and a part of the purchase money had been paid; it was not shown that the vendors were in possession of the land nor that the vendee would probably fail to comply with his contract; the vendors when asked by the jury of view as to the proper party to serve with notice of the time and place of assessing damages, referred the jury to the vendee. Held, the right to damages resulting from the opening of the road was prima facie in the vendee, and the service of notice upon him was sufficient.

**3.—Same—Claim for Damages—Tender of Compensation.**

Where it appeared that two joint owners of land were both served with notice of the meeting of the jury of view, and they both appeared through and by a common attorney before the jury of view and before the Commissioners' Court, and made no objection to the action of the court in making the allowance of damages in the name of one of the owners, the claim for damages having been so presented by the attorney; and where there was no evidence that the owner in whose name the allowance was made denied that the other joint owner had an interest in the same, nor that they were unable to agree upon a division of the allowance among themselves, the owner whose name was not mentioned in the allowance was not entitled to an injunction to restrain the Commissioners' Court from opening the road.

**4.—Same.**

Where it appeared that upon an award of damages by a Commissioners' Court for opening a road through private lands, the clerk of the court offered to draw a warrant for the amount of the award, which would have been paid upon presentation to the county treasurer, which offer was refused by the owner of the land, and the county, in a proceeding afterwards to enjoin it from opening the road, tendered in money the amount of damages awarded by the court, there was a substantial compliance with the requirements of the statutes relative to the payment of the damages before the opening of the road.

Appeal from the District Court of Carson County. Tried below before Hon. F. P. Greever.

*Lumpkin, Merrill & Lumpkin,* for appellants.—Where one party is the owner of the legal title to lands and another party is the owner of an equitable interest therein by virtue of an executory contract of purchase and sale upon which only a part of the purchase money has been paid, both such owners are entitled to notice of the time and place of the meeting of the jury of view to assess the damages incident to the opening of a public road across such lands. Aggs v. Shackelford County, 85 Texas, 147; Revised Stats., art. 4691; Davidson v. Texas & N. O. R. R. Co., 67 S. W., 1093; Fordyce v. Wolfe, 18 S. W., 145; 15 Cyc., pp. 788-800.

Condemnation proceedings are void as to land owners not served with notice of the time and place of the meeting of the jury of view to assess damages, unless such notice has been waived, and the opening of the road under such proceedings may properly be enjoined.  McIntire v. Lucker, 77 Texas, 259; Evans v. Santana L. S. & L. Co., 81 Texas, 622; Missouri, K. & T. Ry. Co. v. Austin, 40 S. W., 35; Watkins v. Hopkins County, 72 S. W., 872.

Condemnation proceedings are void as to land owners whose land has been taken without just damages and adequate compensation for the land taken, and the opening of a public road under such proceedings may properly be enjoined by such land owners, unless such damages and compensation have been waived.  Travis County v. Trogden, 31 S. W., 358; Carothers v. Johnson County, 94 S. W., 912; Dulaney v. Nolan County, 85 Texas, 225; Constitution, article 1, sec. 17.

A waiver by one of three joint owners of a tract of land of the time and place of a meeting of the jury of view to assess damages, does not amount in law to a waiver by each of such owners to the just damages and adequate compensation guaranteed by the Constitution to such land owners for the opening of a public road across their land.  Dees Bros. v. Harrison, 95 S. W., 1093.

An award of damages due to several land owners by reason of the opening of a public road across their lands when made in one lump sum in the name of one of such land owners without any determination of the question as to how much of said assessment is due to each of such land owners, is absolutely void.  City of Paris v. Tucker, 104 S. W., 1046.

Evidence that two land owners owning different tracts of land were represented before the jury of view by the same agent, and that by direction or consent of such agent, damages were awarded to one of said claimants, is insufficient to support a finding that damages were awarded to each of said land owners, especially where there is no evidence that such agent had any authority to so bind his principals.  Dees Bros. v. Harrison, 95 S. W., 1093; City of Paris v. Tucker, 104 S. W., 1046.

*Hoover & Taylor*, for appellees.

DUNKLIN, ASSOCIATE JUSTICE.—This suit was instituted by G. C. Powell, V. M. Powell, L. J. Gillespie, A. J. Gillespie and J. H. Gillespie against Carson County and the county commissioners and the county judge of that county to enjoin the opening of a public road across portions of three surveys of land designated as sections 35, 56 and 55. Plaintiffs' application for a temporary writ of injunction to restrain the opening of the road pending a trial of the case upon its merits was granted, but upon final hearing judgment was rendered dissolving the injunction and denying plaintiffs any relief, and from that judgment plaintiffs have appealed.

The trial was without the intervention of a jury, and the judge of the trial court filed the following findings of fact and conclusions of law as the basis for the judgment rendered:

"Findings of Fact.

"I.   I find that in April, 1908, George D. Biggs and seven others, freeholders, properly presented their petition to the Commissioners Court of Carson County, Texas, to lay out the road complained of in this suit, and that the petition mentioned showed that notice thereof had been properly given as required by law.

"II.   I find that the Commissioners Court, by a proper order entered of record, granted said petition, and appointed J. C. Stansbury, Sid Williams, J. P. Wisdom, J. A. Berry and F. H. Hill as a jury of view to lay out said road as the law directs; I further find that said jury of view took the oath prescribed by law on the 14th day of September, 1908, and that they proceeded within the time provided by law to lay out and establish said road, the same being a road of the first class, 40 feet wide.

"III.   I further find as matter of fact that the said road was laid out on the section lines of sections 35 and 36 and between the same (said sections being in block No. 2, Carson County, Texas) until they arrived at a point about 1184 varas west of the southeast corner of section 35; that at said point a lake sets in, containing about 150 acres of land, and that the road at said point deviated from the section line and run around said lake to the right, passing through sections 35, 55 and 56, returning to the section line at the end of the lake between sections 55 and 36, from which point it then proceeded as laid out on section lines.

"IV.   I find that section 35 belonged to V. M. Powell; and the north one-half of section 56 belonged to V. M. Powell, and the south one-half of said section to the defendants, Gillespies; and I also find that section 55 belonged to the defendants, Gillespies; I further find, however, that some time prior to the date of the laying out of this road, the Gillespies had sold this land to G. C. Powell under a contract of sale, the terms of which are not disclosed by the evidence.

"V.   I further find that J. C. Stansbury was a member of the board of jury of view and acted as foreman of such jury, and that he sent out the notices to the land owners, notifying them of the time and place at which the jury of view would meet to assess the damages; I further find that he called on L. J. Gillespie to know to whom he should send notices in order to notify as to the meeting of the jury of view to assess the damages as to sections 56 and 55, and I further find that L. J. Gillespie notified the said J. C. Stansbury that they (the Gillespies) had sold the land to G. C. Powell, and that Powell was the proper person for him to notify and the proper person to present claim for damages.

"VI.   I further find that said J. C. Stansbury, acting for said jury of view, properly notified, as the law directs, in writing, G. C. Powell and V. M. Powell of the time and place at which the jury of view would meet to assess the damages, if any, as to the road running through sections 35, 56 and 55.

"VII.   I further find that pursuant to such notices the jury of view met at the time and place designated in said notices, in Panhandle,

Carson County, Texas, for the purpose of assessing the damages aforesaid; and I further find that G. C. Powell and V. M. Powell, acting through J. Sid O'Keefe, an attorney at law, their agent and attorney in fact, appeared before said jury of view at said time and place, and, in behalf of said G. C. Powell and V. M. Powell, presented written claim for damages to sections 35, 56 and 55; and I further find that said jury of view found the damages to said three sections of land, without apportioning the same, at $574.05; I further find that this claim was put in by the said attorney in the name of G. C. Powell and V. M. Powell, but I further find that, with the knowledge of the said attorney there present, the claim was allowed in the name of G. C. Powell alone.

"VIII.   I further find that said jury of view in due time reported to the Commissioners Court of Carson County, Texas, their proceedings in writing at a proper term of said court, and that said report contained proper field notes and description of the road as viewed and laid out by said jury of view, and also presented the claims returned by land owners in writing to said court, together with the amount of their allowance to each, as prescribed by law.

"I further find that upon the return so made by the jury of view to the Commissioners Court of said Carson County, Texas, the said Commissioners Court, on the 11th day of February, 1909, received and passed upon said report, and approved the report except as to damages, the Commissioners Court at said time entering an order reducing the damages allowed by the jury of view to G. C. Powell to $373.25; that said report and all proceedings were recorded as required by law, and said road established by proper order of the Commissioners Court as laid out and recommended by the jury of view.   The court further ordered that the damages allowed to the land owners be paid, or the money deposited with the county treasurer of said Carson County, Texas, to their credit, as the law directs.   The order further established the road as laid out by the jury of view, and ordered the proper road overseers to open and work the same.

"IX.   I further find that when the said Commissioners Court was passing upon this road matter, on the 11th day of February, 1909, J. Sid O'Keefe, attorney, since the meeting of the jury of view, had been elected and was then acting as the county judge of Carson County, Texas, and as chairman of the Commissioners Court of said county; that when this matter came up for consideration before said Commissioners Court, he thereupon vacated his seat and turned the question over entirely to the other members of the Commissioners Court.

"X.   I further find that no appeal was prosecuted or attempted to be prosecuted from the action of said Commissioners Court in assessing the damages to sections 35, 56 and 55 at $373.25; I further find that after the order was passed establishing said road, Joe Rorex, clerk of the said Commissioners Court of Carson County, Texas, offered to draw for G. C. Powell a county warrant for the sum of $373.25, which was refused by said Powell; I further find that at said time there was in the

road and bridge fund of said Carson County, Texas, subject to the payment of this warrant, about $6000, of county funds. I further find that the said G. C. Powell refused to receive said warrant; that at all times since said date there has been on deposit of the funds of Carson County, subject to the payments of said amounts, in the hands of the county treasurer of said county, sufficient money to pay said warrant, and that the same would have been paid at any time if presented.

"I further find that in the trial of this case the defendants tendered to the plaintiff the sum of $373.25, in cash, in payment of the damages as assessed by the Commissioners Court, and that the plaintiffs refused to receive the same.

"XI. I find as a matter of fact that the field notes returned of the road as laid out through the land in controversy showed the road to be 40 feet wide, as described by the field notes, and that no lands were taken except such as were actually included within the boundaries of said 40-foot road as laid out,· staked off and established."

### "Conclusions of Law.

"I. Having entered into a contract for the sale of the lands alleged to belong to them, with the plaintiff G. C. Powell, and having, through L. J. Gillespie, advised the jury of view, through J. C. Stansbury, that G. C. Powell was the proper person to notify, the Gillespies thereby waived any right which they might otherwise have had to damages by reason of laying off the road through, and establishing the road over, their lands, it appearing that G. C. Powell appeared by attorney before the jury of view and presented a written claim for damages covering such lands; and also thereby waived any right they may have otherwise had of notice of the time and place the jury of view would meet for the purpose of assessing the damages to such lands.

"II. G. C. Powell and V. M. Powell having appeared before the jury of view through their agent and attorney in fact, and presented a written claim for damages and urged the same before said jury of view, could not question the notice received of the time and place the jury of view would meet to assess the damages; and the jury of view having fixed the amount of damages and passed upon the claim as presented, and having made return, as the law directs, of their findings, to the Commissioners Court, and the Commissioners Court having thereafter passed upon the same and fixed the damages at $373.25 by a proper order entered upon the minutes of said court, and the same not having been appealed from, injunction would not lie to restrain the opening of the road.

"III. The plaintiffs' cause of action as made by the evidence being the taking of the land in controversy without due compensation, and the plaintiffs, having appeared and presented their claim before the jury of view and the same having been passed upon by the Commissioners Court, if not satisfied with the amount of the award of the Commissioners Court, had a plain legal remedy by appeal; and having failed

to appeal, were not entitled to the writ of injunction, and the same having been granted improperly, should be dissolved."

Chapter 1, title 97, Sayles' Texas Civil Statutes, provides for the establishment of public roads. Among other requirements, article 4675 provides for the appointment of a jury of view to lay out the proposed road, and article 4691 requires that the jury so appointed shall give prior notice to the land owners through whose lands such proposed road may run, or to their agents' or attorneys, of the time when they will proceed to lay out such road, or when they will assess the damages incidental to the opening of the same; and by article 4692 the owner of any such land is given the right to appear before the jury at the time stated in such notice, and present to the jury a statement in writing of the damages claimed by him incidental to the opening of such road. The article last named provides further that the jury shall proceed to assess the damages and shall return their assessment and the claimant's statement with their report to the Commissioners' Court appointing them. It is well settled that an injunction will lie to restrain the opening of a public road without compliance with the terms of the statute above noted requiring previous notice to the owner of the land across which the road is to be established. McIntire v. Lucker, 77 Texas, 259.

Complaint is made that as no previous notice was given to A. J. Gillespie and J. H. Gillespie by the jury of view of the proposed action in laying out the road across sections 55 and 56, the court erred in dissolving the temporary writ of injunction restraining the opening of the road through those two sections. In order to sustain this contention it must be held that A. J. and J. H. Gillespie were owners of those sections as tenants in common with L. J. Gillespie. The only testimony to establish their title was that of plaintiff Guy C. Powell reading as follows: "I own some lands in Carson County, Texas; I am also the owner of contracts on section 55 and the south half of 56; that contract is from Gillespie Brothers, A. J., L. J. and John. There has been a small cash payment made on the contract; the contract has not yet been closed up." This testimony, in connection with the findings of fact by the trial judge, shows that the Gillespies had entered into an executory contract with Guy C. Powell to sell to him all the interest they had in sections 55 and 56, and that Guy C. Powell had made a partial payment of the consideration therefor. That the Gillespies had an interest in the land can not be denied. Their interest, however, would be subject to the right of Guy C. Powell to acquire the fee simple title by the payment of the balance of the contract price. It was not shown that Powell had defaulted in his contract to purchase the land, nor that such default would probably occur.

In the case of Aggs v. Shackelford County, 85 Texas, 147, Aggs, the owner of a mortgage upon land, sought to enjoin the opening of a public road upon the land on the ground that no notice had been served upon him by the jury of view of their intention to lay out the road over the land, and that by the appropriation of the land to public use the value

of his mortgage security was depreciated in the sum of one thousand dollars. He was denied the relief prayed for by the trial court and the judgment was affirmed by the Supreme Court, and in the disposition of the appeal our Supreme Court said: "If, as stated, the condemnation proceedings were illegal, and appellant was not a party to them, he was and is in no way bound by them. As to him the order of condemnation was a nullity, and the land was not taken for public use. So far as he is concerned, the proceedings could have amounted to no more than the granting by the owner to the county of a license to use a strip of land for public purposes. The owner could voluntarily have granted such a license, because until the land should be sold under foreclosure proceedings, he had the right to its use, and to delegate such use to another. The mortgagee could not be heard to complain unless he showed some injury to the land itself. The petition does not aver whether at the institution of this suit the mortgage debt was or was not mature. If it was mature, the mortgagee had a right to institute foreclosure proceedings against the mortgagor, and to make the county a party to those proceedings, as being in control or possession of a portion of the land. If the land, by reason of its use by the county, should not be of sufficient value to meet the demand of the plaintiff, the mortgagee could in that proceeding have his remedy against the county, if it should be found that the county had, in the exercise of the right of eminent domain, taken or damaged the land in impairment of his mortgage security.

"If when this suit was instituted the mortgage was not mature and the plaintiff should be awarded damages, what would he do with the amount of the award? If he should apply it as a credit on the debt, he would be thus asserting an obligation against the county, a stranger, before he had the right to sue even the maker of the debt. If he should not apply it to the debt, he would be thus permitted to put in his pocket an amount of money, without reference to the value of the land at the date of the foreclosure to be had in the future. This would be inequitable."

The trial judge did not find, nor was there any evidence to show, that the establishment of the road in controversy would injure the land itself; and the language quoted from the decision last cited is applicable to A. J. and J. H. Gillespie. They did not show that they were in possession of the land. It may be that the purchase money will be paid as it matures; in fact, in the absence of proof to the contrary, it must be presumed that Guy C. Powell will comply with his obligation to purchase, and in that event his vendors will not suffer any damage by the opening of the road. At all events, if the contingency arises necessitating legal proceedings by the Gillespies for the enforcement of their rights against Guy C. Powell, Carson County can be made a party defendant, and the proceeding heretofore taken by the county to establish the road being a nullity as to the Gillespies, will be no bar to the enforcement of any lien against or right in the land they contracted to sell, which they may have in the event of a failure by Guy C. Powell to perform his

contracts to pay for it. Prima facie, the right to damages resulting from the opening of the road through the lands which the Gillespies had contracted to sell, was in Guy C. Powell. Odell v. G. C. & S. F. Ry., 4 Texas Civ. App., 610 (22 S. W., 821).

Another contention is that the proceeding to establish the road across the land owned by V. M. Powell was void as to him and that he was entitled to an injunction restraining the opening of the road across his land, because, first, the damages to his land are allowed in the name of Guy C. Powell; and second, that there was no apportionment of the damages allowed to him and Guy C. Powell. It is also insisted that the attorney representing the two Powells before the jury of view and before the Commissioners Court had no authority to agree that the damages allowed the two Powells should be allowed in a lump sum without apportionment, and all in the name of Guy C. Powell. This contention is advanced as a proposition of law and not upon any testimony of a positive character showing such lack of authority on the part of the attorney.

J. C. Stansbury, one of the jury of view, testified upon the trial as follows: "I was present at the time the jury of view met for the purpose of assessing the damages. Guy C. Powell and V. M. Powell were represented before that jury of view in claim for damages. They were represented by J. Sid O'Keefe; that claim was considered by the jury of view. We at that time assessed damages but only assessed damages in the name of Guy C. Powell; the reason of that was I think that Mr. Powell had sent Mr. O'Keefe two letters authorizing him to represent them; Mr. O'Keefe was representing the two and put in a claim in the name of this party. That claim was on sections 35, 55 and 56. When we passed on the claim and fixed the amount of damages we fixed it in the manner that their attorney fixed it." This testimony was uncontroverted. Neither of the Powells nor the attorney denied that the attorney had authority to present the claims for the Powells and to have the damages allowed in the manner in which they were allowed. If the attorney did not have such authority, the record fails to show any excuse for failure of the plaintiffs to prove that fact which was peculiarly within their knowledge. Neither was there any evidence to show that Guy C. Powell had denied to V. M. Powell an interest in the amount of damages allowed, nor was there any evidence tending to show that the two Powells were unable to agree upon a division between themselves of the damages so allowed; in the absence of such proof it can not be said that V. M. Powell has shown that he will probably lose his proportionate part of the damages allowed him in the name of Guy C. Powell, and without such proof he does not show himself entitled to the extraordinary remedy of injunction to restrain the opening of the road. This fact distinguishes this case from the decision in the City of Paris v. Tucker, 101 Texas, 99, relied on by appellant. The record shows that both Powells were served with notice of the proposed action of the jury of view, as required by the statute, and that they appeared through their

attorney both before the jury of view and before the Commissioners Court, who finally passed upon the claim for damages. If they were not satisfied with the action of the Commissioners Court, they had a legal remedy by appeal from that judgment.

As found by the trial judge, the plaintiffs were tendered in open court upon the trial of the case the amount of damages allowed by the Commissioners Court, and the county clerk previously offered to draw a county warrant in favor of Guy C. Powell for the sum allowed, which the evidence shows would have been paid, and which offer was refused by Guy C. Powell. This was a substantial compliance with the requirements of the statutes relative to the payment of their damages before the opening of the road. Scaling v. Denny, 58 Texas Civ. App., 279 (125 S. W., 351).

A further contention is made that the court erred in finding that the road established was more than forty feet in width. We have carefully examined the record and find no merit in this contention.

We have found no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.