## Barrett v. Commonwealth.

Oct. 26, 1943.

554

Hiram H. Owens and J. B. Campbell for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—
Reversing.

This appeal is from a two year sentence to the penitentiary following the appellant's conviction of the crime of pandering, denounced by KRS 436.040. Subsection 8 of that section provides for the confinement in the penitentiary of any person who "procures a person for another for the purpose of illicit sexual intercourse and, directly or indirectly, receives a consideration for procuring the person."

Grounds urged for reversal are (1) that the evidence was insufficient to sustain the verdict and that, consequently, a verdict should have been directed for the appellant, (2) that incompetent evidence was admitted and (3) improper argument by the attorney for the Commonwealth.

The only direct testimony was that of Reed Scalf and its substance was as follows: Scalf had been married for some years at the time in controversy and this fact was known to the appellant. Scalf was working at a bus station when the appellant came in and said, "I have got a date for you out here in my car." Upon being asked if any consideration or anything of value passed between them, Scalf answered, "He just said the car is parked back in there and went out." Scalf got in the car and went to Pineville. In the car were the appellant and

others, including a young girl, Jane Hays, with whom Scalf had intercourse at some time during the trip. After Scalf got in the car he was informed by the appellant that he would have to chip in to help buy gas and pay expenses and this he did. Upon returning from the trip the appellant asked him if he "done any good," which Scalf understood to refer to sexual intercourse and he informed the appellant that he had. Upon being asked if he paid the appellant anything to get the date for him, Scalf answered, "No sir, I bought the gas and things like that." Scalf made other trips in the appellant's car when Jane Hays was along and had intercourse with her on these occasions. From four to seven persons were along on these trips and some of them would chip in and buy the gasoline.

Numerous highly leading questions were asked Scalf over the appellant's objection in the effort to get him to state that before he made the first trip it was understood between him and the appellant that he was to have sexual intercourse with the Hays girl and that he agreed in advance with the appellant to buy gasoline as compensation for procuring the girl. Some of these questions were answered in the affirmative, but his testimony as a whole discloses that he was merely informed by appellant that he had a girl in the car for him and that after starting on the trip he agreed to pay part of the expenses and that on other occasions he chipped in his part of the expenses.

In addition to Scalf's testimony, evidence was introduced as to specific acts of immorality by the appellant and as to other crimes committed by him against young girls. Evidence as to the general reputation of the appellant as a panderer was also admitted.

We think the evidence was insufficient to establish a violation of the statute by the appellant. It fails to establish that he procured the girl for Scalf to have intercourse with her and received a consideraiton for so doing. It merely established that Scalf went on these trips at the appellant's invitation and paid his proportion of the expenses of the trips, not a consideration to the appellant for procuring the girl for immoral purposes. In Lutes v. Commonwealth, 236 Ky. 549, 32 S. W. (2d) 620, 74 A. L. R. 304, the evidence was stronger against the accused than the evidence in the case before us and it was held insufficient to establish a violation of the statute. The Assistant Attorney General briefing

the case concedes, in effect, that the evidence was insufficient to sustain the conviction and that a verdict should have been directed for the appellant. We are of the same opinion.

Further error was committed in permitting evidence as to other crimes committed by the appellant. The rule that evidence of other specific acts or crimes committed by the accused is incompetent except to establish some subjective condition upon the part of the accused such as knowledge, intent, plan or motive is so well settled that citation of authorities is superfluous. The evidence as to other crimes committed by the appellant had no tendency to establish any subjective condition on the appellant's part and its admission violated the most fundamental and elementary rules of evidence. The court opened the flood gates and permitted a veritable torrent of highly prejudicial and incompetent evidence to rush through. Certain witnesses were even permitted, in effect, to indicate their conclusions that the appellant was a seducer and procurer of abortions and some of these conclusions were obviously based on pure hearsay and gossip.

The evidence as to the appellant's general reputation as a panderer was also incompetent. Evidence as to his bad general moral reputation would have been competent to impeach him as a witness, but it is never permissible to prove the general reputation of the accused with reference to the particular crime with which he is charged except in rare instances when such evidence is made competent by statute.

The incompetent evidence permitted in this case was so highly prejudicial and inflammatory that it was well calculated to result in the accused's conviction regardless of the weakness of the evidence as to his guilt of the crime charged in the indictment. It is little to be wondered that he was convicted. The attorney for the Commonwealth used this evidence with telling effect in his argument to the jury, but his argument was legitimate since it was based on evidence permitted to go to the jury.

Judgment reversed with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.