BRAZOS RIVER CONSERVATION & RECLAMATION DIST. v. HARMON et al.

No. 2405.

Court of Civil Appeals of Texas. Eastland.

Jan. 28, 1944.

Rehearing Denied Feb. 25, 1944.

T. T. Bouldin, of Mineral Wells, and Sidney Samuels, of Fort Worth, for appellant.

J. R. Creighton and Ritchie & Ritchie, all of Mineral Wells, and Martin, Moore & Brewster, of Fort Worth, for appellees.

LESLIE, Chief Justice.

Mrs. Jessie Harmon and others undertook to enjoin the Brazos River Conservation and Reclamation District from entering upon and appropriating their lands for

the construction of Possum Kingdom Dam. Brazos River and Reclamation Dist. v. Costello, 135 Tex. 307, 143 S.W.2d 577, 130 A.L.R. 1220. The District by way of cross-action under Art. 3269, Vernon's Ann.Civ.St., sought condemnation under the right of eminent domain. The trial was before the court and jury, and upon the latter's answers to special issues judgment was entered awarding damages for land taken and also denying right of condemnation of alleged "excess acreage" on the ground the District was guilty of abuse of discretion in seeking to condemn such acreage. In response to other issues, the jury found that said "excess lands" above the high-water level of the reservoir were being sought by the District for park and recreational purposes and also that one of the purposes was to lease such lands to individuals for private camp sites. Other elements of the verdict and judgment will be later referred to.

The District appeals, presenting fifty-four points of error. Some are grouped and briefed together and will be so considered here.

The District's cross-action in condemnation was filed May 25, 1940. At that time Mrs. Harmon and her husband owned about 1385.64 acres adjacent to the dam and sought to be condemned for said public use. She owned all interest in the land except a small mineral interest formerly owned by others, but owned by the District at time of trial.

On March 31, 1942, and while the proceeding was pending, the Harmons conveyed their land, except a mineral interest retained, to E. Constantin. He intervened in said cause, and alleged that subsequent to the filing of District's cross-action he acquired on March 31, 1942, by purchase from Mrs. Harmon all her interest in said land except oil and gas rights reserved by her.

As to such rights Mrs. Harmon, joined by her husband, answered the District's cross-action, and alleged they were the owners of an undivided one-fourth interest in the oil and gas and other minerals under 1432.4 acres of the land, designated as "First Tract", and a like one-half interest in the oil, gas and other minerals in the remainder of the lands designated as "Second" and "Third" tracts. In this answer the Harmons also alleged that on March 31, 1942, they conveyed to intervenor Constantin all their interest in the land except said

mineral interest in the tracts above specified. They also alleged that in making such conveyance to Constantin they retained a vendor's lien to secure unpaid purchase money for the land.

The District sought a fee simple title in the surface and easement on the mineral rights. Under a previous order of the trial court, pursuant to opinion of the Supreme Court, the District placed in the registry of the trial court $28,000 on October 30, 1940, for the purpose of securing the Harmons in payment of damages accruing to them by virtue of the taking of said land and easement, and for the further purpose of giving the District the right to take immediate possession of said property.

May 10, 1941, the Dam was filled to 1000 foot contour line, and approximately 750 acres of the original Harmon lands were inundated.

Intervenor Constantin limited his right of recovery to damages which the District might inflict on the property he had acquired from the Harmons March 31, 1942, and the Harmons confirmed such sale and sought damages arising from any easement the District might impress on their retained mineral interest.

In addition to the above allegations, the intervenor further alleged that he "also acquired in connection with said purchase the right to share in the fund heretofore deposited in the registry of the court by Petitioner District for the securing of certain property owners as hereinafter more fully described; including the right to recover such amount or portion of funds with interest as Intervenor may be found entitled to." As stated, the Harmons confirmed such right in him, set up the retained vendor's lien to secure the payment of the balance of the purchase money, and asked that any recovery awarded Intervenor be applied to the payment of the balance of said unpaid purchase money debt.

In the trial below intervenor raised the issue that the District was seeking to condemn some 800 acres of his land lying above the 1000 foot contour line (the level of the reservoir), for unauthorized non-public purposes (1) private use of individuals for camp sites, (2) park purposes, and that directors of the District were guilty of an abuse of discretion in determining the necessity warranting the taking of such excess acreage. He did not resist the District's right to condemn the 755.04 acres

lying below the 1000 foot contour line but alleged its value or the damage resulting from its taking to be $25,424.04. The attempt to take the 800 acres above the high-water mark was resisted on the grounds above stated.

The jury found the value of the land in "Tract One" below the contour line (less Mrs. Harmon's mineral interest, and that of some third parties, J. C. Reese, et al., not involved in this suit) to be $15,097.50. The jury found that parts of Tracts "Two" and "Three" owned by intervenor below the contour line, exclusive of Mrs. Harmon's mineral interest therein, to be of the value of $2,101.

In his judgment the trial court found "That Intervenor Constantin acquired by purchase all the rights of Mrs. Jessie Harmon in and to the deposit heretofore made by the cross-complainant (the District) to secure her in the payment for said property, except that Mrs. Harmon retained a mineral interest as hereinafter described."

The trial court further decreed that intervenor recover from the District $17,-198.50 as damages for property taken by the District in each of the above tracts but the court under the findings of the jury refused to enter a judgment of condemnation for the District of any of intervenor's land situated above the 1000 foot contour line, or the high-water mark.

The court further found Mrs. Harmon held a purchase money obligation and vendor's lien against the property originally sold to intervenor and that the amount so secured was largely in excess of·the above award to the intervenor. Thereupon, the court, after providing for the payment of a small amount to the Federal Land Bank (secured by tracts "Three" and "Four"), decreed that the remainder of the sum awarded Constantin should be paid to Mrs. Harmon to be by her credited on the vendor's lien note which Constantin executed to her in part payment for her lands.

The judgment also provided: "And when said sum is paid to her the lien of Mrs. Jessie Harmon on the 671 acres shall be extinguished and all the claims of Mrs. Jessie Harmon growing out of the taking and condemnation of all the property hereinabove described are here extinguished."

From different angles the appellant's Points 1 to 7 raise substantially the same question, whether intervenor Constantin, who purchased said land during the pendency of the condemnation suit, was in a position to recover judgment for the value of the property condemned and taken from him in the absence of a formal assignment from Mrs. Harmon of her right or cause of action accruing as a result of the District's taking said property at a time prior to her sale and transfer of the same to the intervenor. Stated differently, the District insists that "inasmuch as there was no assignment or transfer by Mrs. Harmon to Constantin of the right of action for damages, on the recovery thereof", he is not "entitled to stand in the shoes of the vendor or to recover damages from the District because of such taking."

These propositions do not fully or accurately reflect the background of facts which may be briefly restated and summarized as follows: Constantin purchased the land from Mrs. Harmon during the pendency of the condemnation proceeding and prior to final judgment or payment to condemnee of any award. In his pleadings he sought recovery of the value of his lands taken, exclusive of Mrs. Harmon's preserved mineral interest therein. In addition, he alleged that by reason of having so acquired said property, he had a right to share in or recover his proportionate or corresponding share of the funds theretofore deposited by the District in the registry of the court as security for Mrs. Harmon and to enable to take possession of said lands. Supplementing intervenor's contention and in harmony therewith, Mrs. Harmon recognized his theory of recovery, and sought to recover damages resulting to her mineral interests only. In addition she asked that such amount of the deposit as might be awarded intervenor, representing the value of the land taken from him, be applied on the vendor's lien note executed to her by Constantin for the land conveyed to him.

Obviously Mrs. Harmon, original vendor, and Constantin, her vendee, are both parties to this suit, asserting no conflicting claims, and are bound by the judgment. They are represented by the same attorneys and are in accord as to the disposition the judgment should make of the award recovered by them respectively. No double recovery is involved. Aside from any alleged errors that may have been committed in the trial, the aggregate of the judgment awarded intervenor and Mrs. Harmon is the amount Mrs. Harmon would have been entitled to had she never conveyed any part of her land to Constantin.

In that respect the situation is like that in Fordyce v. Wolfe, 82 Tex. 239, 18 S.W. 145, 146, in which our Supreme Court, through Judge Gaines, said:

"Appellee and appellant Measles are entitled to recover sums which, added together, will equal the amount the appellee would have been entitled to recover had he never conveyed, and no more; and care should be taken that the receivers be not subjected to a double recovery."

That case was a contest between a vendor and his vendee for an award resulting from the appropriation by a railway company of a right of way.

Under the circumstances and in view of the fact that the intervenor Constantin purchased said lands prior to said final judgment and any payment of award to condemnee, we conclude that intervenor was entitled to recover as damages such sum of money as represented the value of his lands condemned, even though he had no formal assignment thereof from Mrs. Harmon, but only said deed. The District naturally expects to pay for the land and easement, and, as pointed out, the judgment protects against any subsequent demand by either intervenor or Mrs. Harmon. In that respect "care" was taken by the trial court as admonished in Fordyce v. Wolfe, supra. Being thus protected, the District is not concerned about the division between vendor and vendee of a just award or compensation it expects to pay for the rights acquired.

Further, the judgment at the request of Mrs. Harmon and with acquiescence of intervenor applies his recovery to the vendor's lien note and thereby renders the right sought by the District free from any uncertainty or the encumbrance of said lien. The above conclusion is logical for the additional reason that prior to the entry of final judgment in this cause, neither Mrs. Harmon, the intervenor, nor the District could know or determine at the time of her sale of the land what part thereof would be condemned and what part not so taken. The trial resulted in a condemnation merely of that part under the 1000 foot contour line and the acreage and rights taken and the damages occurring were then rendered definite as to all parties.

In what has been said, we have proceeded in recognition of Article 3271, Vernon's Ann.Civ.St., which provides for vesting of property rights in such proceedings as follows:

"Whenever acquired as hereinbefore provided, the judgment of the court shall vest such right in the company acquiring the same." See City of Paris v. Tucker, 101 Tex. 99, 104 S.W. 1046.

This determines that as between the vendor and vendee of property sought to be condemned right to the award generally and ultimately depends on whether the title has actually passed to the condemnor at the time of the sale, and in this latter respect, it must be borne in mind that the condemnor has the right to abandon such proceedings before judgment and before the right to condemn has vested. Leonard v. Small, Tex.Civ.App., 28 S.W.2d 826, writ refused, and authorities there cited. Pursuing such course would result merely in such damages as were occasioned by temporary occupancy, etc., of the property.

The vendee's right to such recovery in condemnation under the circumstances of this case is upheld in Security Company v. Rice, 215 Cal. 263, 9 P.2d 817, 82 A.L.R. 1059. In a lengthy annotation following that opinion in 82 A.L.R. 1059, 1063, the rule is thus stated:

"It is a well-established rule that where property is purchased which is subject to pending condemnation proceedings, under which title has not vested in the condemnor, and the deed conveying such property is silent as to the right to the award money to be paid, such money belongs to, and is recoverable by, the vendee."

We find nothing in the Texas statutes or decisions inconsistent with the proper application of said rule, and said annotations cite the Texas case of Fordyce v. Wolfe, 82 Tex. 239, 18 S.W. 145, in support thereof. See also Powell v. Carson County, 62 Tex.Civ.App. 197, 131 S.W. 235, writ refused.

Under similar circumstances in Carli v. Stillwater & St. P. R. Co., 16 Minn. 260, 16 Gil. 234, it was held:

"It is apparent * * * that when an appeal is taken from the report of commissioners the title to the premises sought to be taken for the use of the road does not vest in the railroad company before judgment upon the verdict or assessment * * * the title to the premises remained therefore in the owner of the land during the time allowed for an appeal. Within

this time, Schulenberg, the owner of the land, conveyed the premises to Carli, and the right to recover damages for the proposed taking of the premises for the use of the road passed to him as incident to the ownership of the land."

For other authorities, see In re Condemnation of Lands in Ramsey County, 93 Minn. 30, 100 N.W. 650; Bailey v. Briant, 117 Ind. 362, 20 N.E. 278; Sternberger v. Sanitary Dist., 100 Neb. 449, 160 N.W. 740; Price v. Engelking, 58 Ill.App. 547; Bank of America v. Glendale, 4 Cal.2d 477, 50 P.2d 1035.

■ Further, and independently of the foregoing, the agreement and understanding between the vendor and vendee as to their respective rights in any possible award is clearly manifested by the foregoing statement from the record, and it was unnecessary that any such assignment of the claim or cause of action be formerly made by Mrs. Harmon or evidenced by writing. Ferguson Seed Farms v. Ferguson, Tex.Civ.App., 52 S.W.2d 354.

For any and all the reasons stated, we conclude that the claim or cause of action owned at first by Mrs. Harmon was shown to have been transferred or assigned to intervenor. If there be any error in that conclusion (and we think there is none) and it should be considered that the intervenor is not entitled to a personal judgment for the amount decreed him, then certainly such recovery would necessarily belong to Mrs. Harmon, and since the judgment ordered intervenor's recovery paid to her and applied on the vendor's lien notes, affording condemnor a clear title to whatever it acquired, then it would seem that the District could have no just grounds to complain at the results or intervenor's recovery thus applied.

The authority relied on by the appellant to support the propositions under consideration are not deemed applicable or controlling under the facts of this case. Such authorities, especially the Texas cases, involve suits for damages arising from the creation or maintenance of nuisances or the recurrence of injury therefrom. The transfer of ownership of property pending condemnation proceedings was not involved in but two of said cases, and in neither of these were the vendor and vendee both parties to the suit, as in the instant condemnation case in which the property rights must be paid for, once and for all.

■ It is of no importance that Mrs. Harmon's deed contained a recital that the conveyance to intervenor was made subject to pending condemnation proceedings. That recitation was in connection with references to pipelines, rights of ways, reservation of cemetery lots, etc., and amounted to a mere limitation on the vendor's liability under a general warranty. The recitation in no way evidences a reservation of rights to the award. The case of Towne v. City of Los Angeles et al., 4 Cal.App.2d 418, 41 P.2d 363, 364, is analogous, and it was there held that "The recital that the conveyance was made 'subject to condemnation proceedings' did not amount to a reservation of any rights to the grantors. It merely expressed the understanding of the parties as to the condition of the title conveyed." That authority also holds, with reference to the necessity for formal assignment by vendor to vendee, as follows:

"Respondents rely upon the finding of the trial court that Kamischer and wife did not transfer their interest in the condemnation award to Towne, as alleged in the complaint. This allegation was immaterial; it was alleged and admitted that the land was conveyed, and a separate assignment was unnecessary."

Appellant's first seven points are overruled.

By 15 other points appellant predicates various errors on the rulings of the trial court by which testimony was admitted on the issues of alleged abuse of discretion by the Board of Directors in attempting to condemn as necessary or convenient for said public use that acreage (conveyed by Harmons to Constantin) which lies above the 1000 foot contour line.

As to the first tract of about 1400 acres (6 to 10 miles above the dam) known as the "Johnson Bend" tract, the intervenor contested the District's right to take 830.6 acres above the contour line, but made no such contest as to 744.04 acres below that line. In Tracts 2 and 3, embracing about 1000 acres, 25 or 30 miles upstream from the dam, only 84.4 acres lay below the line, and the intervenor challenges the right of the District to take the acreage above that line.

The acreage in each tract above the contour line, which Constantin challenges the District's right to condemn, will be referred to as the "excess acreage". As to

this acreage, it was his contention that the District, in determining to take the same, acted with a clear abuse of discretion.

The different grounds on which he challenges the District's right to take such acreage by condemnation is in substance (1) that the Board of Directors acted with a clear abuse of discretion in determining to take that acreage on the ground that it "was necessary or convenient for the purposes alleged in the District's cross-action", (2) that the District was improperly and illegally condemning the land (a) "for use as a park", (b) "to lease to individuals for camp sites", and (c) "that it (might) be used for recreation."

More specifically, intervenor Constantin alleged that the District, through its Board of Directors, was seeking to condemn said alleged "excess acreage" in the three tracts, not for a public use under the statute, but for a private use and the use of private individuals and commercial concerns for profit; that the District had inaugurated and carried into effect a systematic plan and scheme of platting excess lands already acquired by it around the reservoir and making long-term leases on such various tracts to private individuals, and that such was their plan, scheme and design as to the lands in controversy.

The intervenor further alleged that in any event the District was seeking to condemn the excess acreage in the Johnson Bend for the purpose of conveying it to the State Park Board for park purposes, for which purpose the Park Board and the District had no such power of condemnation; that the other lands adjoining the Johnson Bend had already been conveyed by it to the Park Board for such purposes, and that Johnson Bend was similarly situated suitable for such purposes and sought therefor by the District.

The intervenor further alleged that the Board of Directors in determining to take said excess acreage acted arbitrarily and capriciously toward the defendant and intervenor in trying to take all of the acreage in question for the reason that more than 800 acres of this land was above the high-water level of the reservoir and not needed for the project; that in other instances on adjoining properties the District had refrained from buying or appropriating any excess acreage but had permitted the landowners to retain the lands owned by them down to the water line; that such attitude on the part of the District as to the Harmon lands (later purchased by intervenor) resulted in part from the fact that Mrs. Harmon had been a party to the Costello injunction suit, and that as a result of disagreements and ill will generated by such litigation, the Board had formed the plan and design of taking all the property away from her and her vendee, although they had no real use for it in connection with said project.

The trial court submitted the above contentions by issues (1) to (8), inclusive, and in response thereto the jury found: (1) "that one of the purposes for which the District is seeking to condemn the land in Tract Number One, (Johnson Bend above the 1000 foot contour line) is for use as a park"; (2) "that one of the purposes for which the District is seeking to condemn the land in Tract Number One * * * is to lease to individuals for camp sites"; "(3) that the main purpose for which the District seeks to condemn the land in Tract Number One above the 1000 foot contour line is that it may be used for recreation"; (4) "that the main purpose for which the District seeks to condemn that part of Tract Number Two lying above the 1000 foot contour line and the back line is to lease to individuals for camp sites"; (5) "that the main purpose for which the District seeks to condemn that part of tract number three, lying between the 1000 foot contour line and the back line is to lease to individuals for camp sites"; (6) "that the board of directors of the District acted with a clear abuse of discretion in determining that the taking of that part of tract number one (Johnson Bend) lying above the 1000 foot contour line was necessary or convenient for the purposes alleged in the District's cross-action"; (7) "That the board of directors of the District acted with a clear abuse of discretion in determining that the taking of that part of Tract Number One (Johnson Bend) lying above the back line was necessary or convenient for the purposes alleged in the District's cross-action"; (8) "that the Board of Directors of the District acted with a clear abuse of discretion in determining that the taking of that part of Tract Two and Tract Three lying between the 1000 foot contour line and back line was necessary or convenient for the purposes alleged in the District's cross-action."

By said points of error the District challenges the existence of any evidence in the record to support the jury's findings, the sufficiency of the testimony for such purpose, and in many respects the admissibili-

ty of testimony introduced on the issues. In brief, the District contends there is no evidence in the record of the case that would authorize or justify the court in submitting an issue to the jury challenging the right of the District to condemn all the land sought to be condemned by it, which is described in its cross-action in this case. Fundamentally it predicates such contention upon the proposition that the amount of land to be taken and the necessity therefor is within the sound discretion of the Board of Directors of the Reclamation District and that their acts in determining the amount of land to be taken and the necessity therefor is legislative (political) and not judicial.

■ In general that is a sound proposition and the authorities relied upon by both appellant and appellee are in accord thereon. West v. Whitehead, Tex.Civ.App., 239 S.W. 976; Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 4; Crary v. Port Arthur Channel & Dock Co., 92 Tex. 275, 47 S.W. 967; Grayson County v. Harrell, Tex.Civ.App., 202 S.W. 160; City of Kirkwood v. Venable, Mo.Sup., 175 S.W.2d 8.

■ However, the authorities also agree that such broad grant of power is limited to the amount of property reasonably necessary for the public use, and that such power may not be exercised where the governing body has clearly abused its discretion. The limitation or exception is frequently set forth in the authorities.

In Bobbitt v. Gordon, Tex.Civ.App., 108 S.W.2d 234, 238, this language is used:

"Their acts 'in the exercise of an honest discretion, must be respected when untainted by fraud and unassailed on account of accident or mistake occurring in their performance, or such abuse of discretion as under the authorities would avoid the same.'"

The opinion in Pecos & N. T. R. Co. v. Malone, Tex.Civ.App., 190 S.W. 809, 810, states its rule thus:

" 'The Legislature, or the party to whom the power is delegated, has the same discretion in determining what estate or interest in the required property shall be condemned, and * * * the owner cannot have the decision reversed by a court, except in a plain case of abuse.' "

The rule is acceptably stated in 29 C.J. S., Eminent Domain, § 89, p. 882, as follows:

"Generally, a determination by the grantee of the power is conclusive and is not subject to judicial review, in the absence of fraud, bad faith, or clear abuse of discretion."

Obviously the original rule and the one limiting the same have the same intrinsic meaning to both appellant and appellee. The appellant in his brief makes this statement thereof:

"The only question to be considered with reference to the amount of land necessary or convenient after being determined by the Board of Directors is the sole question, was the Board of Directors guilty of such fraud, clear abuse of discretion, which would necessarily have to be the equivalent of fraud, or were their acts in determining the amount necessary and convenient tainted with fraud?"

Other authorities: Tod v. Massey, Tex. Civ.App., 30 S.W.2d 532; 46 C.J. p. 1171; 11 C.J. 832; 14 C.J.S., Clear, p. 1199.

In recognition of the above rules of law, defendant and intervenor, by pleadings and testimony, sought to raise and establish the affirmation of the foregoing issues. Upon said issues of whether the District acted in clear abuse of its discretion in seeking to condemn the alleged "excess acreage", or so acted and did so for the purpose of sub-dividing it and leasing it to private individuals on long term leases, or for the further purpose of conveying large portions thereof to the State Park Board, etc., much evidence was introduced and certain exhibits and minutes of the Board of Directors tending to reflect the alleged objects and plan of the District. Bearing upon the intervenor's theory that the excess acreage was being acquired not as necessary or convenient for the public purposes contemplated by the Statute, but for purposes foreign and unrelated thereto, the following minutes of the District were introduced: "Motion by Glass, Seconded by Whatley:

"Resolved that the land committee be and is hereby authorized to acquire for the District approximately 1500 acres of additional land needed to complete an area adjoining the Possum Kingdom Reservoir in order to make it suitable for the location of a state park; And the officers of the District are hereby authorized to transfer to the State Parks Board such lands adjoining the Possum Kingdom Reservoir as are suitable for development as

state parks. Vote—Eleven Ayes and one Nay."

Further, "Motion by Dr. Glass, Seconded by Mr. Whatley: That the Brazos River District adopt the policy of leasing instead of selling lands adjoining the Possum King-dom Reservoir for camp sites or other recreational purposes. Motion carried unanimously."

Also, "Motion by Mr. Callan, Seconded by Mr. Daniel: That the Recreational Committee, Mr. R. E. Baskin, Chairman, be authorized to make leases on the shore line property, subject to the approval of the Board. Motion carried unanimously."

Pursuant to the above resolutions, the Board had prepared and printed a lease form to be used in leasing camp sites. Names of persons who had already acquired such and contemplated doing so were introduced in evidence.

In the pursuance of the project the District had acquired and theretofore deeded to the State Park Board approximately 7000 acres to be used for a state park. The deed was introduced in evidence. The plan evidently contemplated "recreational and pleasure purposes."

There was evidence by a member of the Board of Directors that "We had hopes of putting in several thousand camps there."

The intervenor offered other testimony tending to show that the location of his lands was at neither end of the dam, but several miles therefrom, and not necessary or convenient for roadways or approaches to the dam, or for structures in connection with the operation thereof.

■ The foregoing reflects but part of the testimony, which is lengthy and offered in connection with considerable other testimony to establish said issues. It is not believed that any useful purpose would be served by setting forth the testimony in detail. Under proper pleadings, testimony and issues the jury has found that the District sought to condemn the alleged "excess lands" for purposes not warranted by the statute, and in addition, has found that the effort to condemn the same amounted to an abuse of discretion by the authorities in charge of the proceedings. Under the circumstances and considering the nature of the testimony this court would not be authorized to set aside such findings.

■ The District's right to take said land for a public park, camp sites and recreational purposes are all in the same cate-gory and it is unnecessary to discuss the questions at length. The same rules govern, and the authority to condemn for such purposes is neither expressly given nor necessarily implied in the law creating the District. From the viewpoint of such activities, the law must be strictly construed. In 29 C.J.S., Eminent Domain, p. 806, § 22, the rule is stated:

"The right to exercise the power of eminent domain must be conferred by statute, either in express words or by necessary implication."

Discussing the rule, the text makes the further statement:

"Such power being in derogation of common right, the acts conferring it are to be strictly construed in favor of the landowner * * *." Citing Hall v. Wilbarger County, Tex.Civ.App., 37 S.W.2d 1041; Wood v. Bird, Tex.Civ.App., 32 S.W.2d 271; Van Valkenburgh v. Ford, Tex.Civ. App., 207 S.W. 405; Id., Tex.Com.App., 228 S.W. 194; 20 C.J. p. 533–534.

As held in Tod v. Massey, Tex.Civ.App., 30 S.W.2d 532, 534:

"'There is no law in this state which would authorize the taking of private property of one individual for the private use or convenience of another individual, or set of individuals, as is here attempted. That the lands of the citizen may be taken under the right of eminent domain for public highways is well settled; but the right of eminent domain implies that the purpose for which it may be exercised must be a public one and not a mere private one. A "public use" is one which concerns the whole community in which it exists, as contradistinguished from a particular individual or number of individuals.'"

The Massey opinion further quotes with approval the following from Moseley v. Bradford, Tex.Civ.App., 190 S.W. 824:

"'The action of a municipal body in taking private property for the benefit of an individual only, under the guise of a benefit to the public, is held by the authorities to be a legal fraud upon the rights of the owner of the property taken, and upon that theory may be impeached and set aside, even though the officers who take it had no fraudulent intent in same. Kansas City v. Hyde, 196 Mo. 498, 96 S.W. 201, 7 L.R.A., N.S., 639, 113 Am.St.Rep. 766.'"

The same principle was recognized in Houston North Shore R. Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, 792, 108 A.L. R. 1508, wherein it was said:

"This article is an enunciation of the rule existing without statute, the basis of which is the fundamental principle that no more property and no greater estate or interest may be taken than the public use requires."

See also Leathers v. Craig, Tex.Civ. App., 228 S.W. 995; Wise v. Abilene Water Co., Tex.Civ.App., 261 S.W. 549; 29 C.J.S., Eminent Domain, §§ 29, 31, pp. 816, 824; 10 R.C.L. 28.

In the views expressed, it is not to be implied that the Board of Directors or the individuals thereof were or are motivated by corrupt purposes or active fraudulent intent. Doubtless their purpose was to serve the best interest of the public, whereas the controlling question with the court is merely the legality of their acts when measured by the specific language of a statute, whose terms may not be transcended, although other benefits might seem to them desirable in connection with the enterprise. True, the power of eminent domain inheres in sovereignty and is limited by constitutional provisions only. Nevertheless, it is the law that neither the state nor its subdivisions can exercise the power unless the law-making authority has conferred such rights by statutory enactments. Hence, the District is compelled to look to such source for the powers conferred upon it by legislative enactment. In the light of such authority, it would seem that the District would have no more right to condemn the alleged "excess acreage" (if not necessary or convenient for the statutory public purpose) and subdivide same as lake front property, making long term private leases thereof to selected individuals, than it would have to condemn other lands contiguous to those necessary for the public purpose and sell such contiguous lands to selected homesteaders.

In arriving at the foregoing conclusions denying the District's right or authority to acquire additional and contiguous lands for private purposes, it must be borne in mind that the case in hand is not one involving the right or authority of the District to sell or lease a part of its acreage theretofore acquired on the basis of "necessity or convenience", or by any other legitimate method, but the instant case is one where the right to condemn is raised and challenged in the outset by the owner of the property and the jury has convicted the District of attempting to take the "excess acreage" for the main or primary purpose of subletting to individuals for profit, etc. This last circumstance renders inapplicable those authorities upholding a condemnor's right to make certain uses or disposition of property already acquired in some authorized manner.

 The statutes, especially Articles 7470, 7470a and 7471, Vernon's Ann.Civ. St. specify the use for which public waters of the state may be appropriated and state the order of preference or priority of such uses. These statutes manifest no legislative effort or purpose to confer condemnation powers on the District and they are not the source of such authority. In fact, the power of eminent domain vested in the District (Acts 1934, 4th Called Sess., c. 3, as amended by Acts 1935, 1st Called Sess., c. 368, § 13a, Vol. 21, Vernon's Ann. Civ.St. following art. 8197f) is limited to such property as is "necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act in the manner provided by General Law with respect to condemnation, or at the option of the district." Obviously the alleged right of the District to condemn or appropriate the land for parks and recreational purposes (found to be a main or primary purpose as to the excess lands) does not flow from the above statutes, which relate strictly to the purpose for which public waters of the state may be appropriated. Neither is there any authority in the act creating the District, and especially Sec. 3, Sp. Acts 1929, 2d Called Sess., c. 13, Vernon's Ann.Civ.St. following art. 8197f (specifying the "additional" purposes for which the District may exercise the power of control over and employment of public waters) which would authorize the District to condemn said property for the establishment or maintenance of pleasure resorts, camp sites or public parks. Clearly the District is created primarily for the purpose of preservation, conservation and the distribution of public waters and the generation of hydro-electric power, and no proper rule of construction will extend the meaning of the law so as to allow it the authority to condemn private property primarily for parks, camp sites and recreational purposes. 29 C.J.S., Eminent Domain, § 22, p. 806.

 The District also insists that the judgment ignores its rights under Sec. 9b (Acts 1934, 4th Called Sess., c. 3, Vol. 21, Vernon's Ann.Civ.St. following art. 8197f). This statute is very indefinite in meaning, but it is believed to be without any application to the facts of this case. Evidently the statute means to provide the public

way of access to the waters of the dam. In part the section reads:

"Within one year, after completing * * * the dams * * * the * * * District shall, by purchase or otherwise, acquire two (2) strips of land on each side of every reservoir, * * * each strip to be at least one (1) mile long, the said strips to be wide enough so that the water at its highest and lowest point will be abutting said strip of land; * * * one strip shall be located near the dam site, and the other strip shall be located near the head water of the reservoir."

Such provision of the statute necessarily eliminates intervenor's land from any consideration for such purposes. One of his tracts is from 6 to 10 miles above the dam, and the other 25 or 30 miles therefrom, and the maps in evidence indicate the reservoir is about 50 or 60 miles in length. Neither of the tracts is "near the dam site", nor "near the head water of the reservoir", as specified in Sec. 9b.

 The trial court charged the jury on circumstantial evidence, and the appellant's 37th and 38th points of error challenge the action of the court in so doing. In its nature the intervenor's case rested on that type of evidence. The fact that evidence is circumstantial does not render it incompetent nor destroy its probative force. "Indeed, evidence of this character may be, and often is, as strong as direct and positive evidence." 17 T.J. p. 907, sec. 409.

There is no reason why the court should not give such charge in a civil case where a litigant wholly or partly relies upon such evidence to support his contentions. West v. Cashin, Tex.Civ.App., 83 S.W.2d 1001; Venting v. Carrigan, Tex.Civ.App., 26 S. W.2d 711; Parr v. Gardner, Tex.Civ.App., 293 S.W. 859, 864; Jones v. Hess, Tex.Civ. App., 48 S.W. 46; Rounds v. Coleman, Tex.Civ.App., 214 S.W. 496; 24 T.J. p. 589, sec. 101; 20 T.L.R. 36; Rule 277, Texas Rules of Civil Procedure.

Appellant's objections point out no erroneous features in the charge on circumstantial evidence, and we discover none. The gist of the appellee's controlling issue was scarcely susceptible of proof in any other way.

 The appellant's 36th point predicates error on the refusal of the trial court to give its specially requested instruction, to the effect that the District through its Board of Directors had the ex-

clusive power to determine the necessity or convenience of taking appellee's property, except where the exercise of such power involves a clear abuse of discretion, etc. The general issues and instructions given by the court sufficiently cover the point, which is overruled. Further, the point is not briefed or followed by a statement, argument or authorities.

Points 36, 44, 50, 13 and 39 are grouped in appellant's brief, but the statement following the group refers specifically to Points 13 and 39 only. Point 13 pertains to introduction of evidence by appellees of the District's deed of 7,000 acres of land to the State Park Board for park purposes, and Point 39 merely relates to the issue of whether the District in condemning the land in "Tract One" (Johnson Bend) above the 1000 feet contour line was for use as a park.

 Further, the specially requested charge was not such "definition or explanatory instruction as was necessary to enable the jury to pass on other issues submitted." Rule 277; Boaz v. White's Auto Stores, Tex.Sup., 172 S.W.2d 481.

Although this special charge is referred to later on in appellant's brief in the statement under Points 49, 52 and 58, its materiality under those points does not appear. 49 relates to the definition of "abuse of discretion", 52 to such issue involving the taking of the land above the 1000 foot contour line on Tract "One", and 53 relates to such issue as to Tracts "Two and Three".

It is not believed that the court committed any error in his definition of clear abuse of discretion. At least no vice is specifically pointed out by the objections.

In its brief the District restates Point 49, together with the original objections to the definition. The argument which follows in the brief passes over these matters and is devoted to a discussion of Issues 7 and 8 (having to do with the District's right to condemn Tracts "One" and "Two and Three", respectively, and concludes "that the court went far afield in permitting the issue to go to the jury, and that the evidence was altogether lacking in substance for that purpose."

 The term "abuse of discretion" does not readily lend itself to an exact definition and no standard rule or definition seems to be uniformly recognized by the many authorities considering the same. What constitutes it seems to depend large-

ly upon the facts of the particular case (1 C.J.S., Abuse, p. 402; Borger v. Mineral Wells Clay Products Co., Tex.Civ.App., 80 S.W.2d 333; 1 C.J. p. 372), but in the instant one, where fraud in law, as contradistinguished from actual and intentional fraud, is involved, it appears that a substantially correct test was given the jury as above pointed out. 1 C.J. p. 372; 1 C.J.S., Abuse, p. 402.

■■■ The definition given does not confuse conclusions based on mere mistake of judgment with those springing from partiality, arbitrariness, etc., resulting in active fraud, but tells the jury that "mere mistake" of judgment standing alone is not sufficient to overthrow the Board's determination of the land sought to be condemned, but that such action to be overcome must rest on the additional elements of arbitrariness, capriciousness, partiality, etc. Massie v. City of Floydada, Tex.Civ. App., 112 S.W.2d 243; Grayson County v. Harrell, Tex.Civ.App., 202 S.W. 160.

By the 54th point, appellant contends the trial court committed fundamental error in rendering judgment for only part of the land sought to be condemned by the District for the reason no evidence was offered supporting such judgment, and there was no proof of bad faith to authorize the court to render the same. Stated differently, the District contends the trial court had no right to act on the jury verdict (convicting the Board of abuse of discretion) and arrest the District's appropriation of land above the 1000 foot contour line and confine its appropriation merely to the land below that line and render judgment accordingly. By so doing, the appellant claims "No margin was left for police purposes, no boundaries to preclude pollution of the waters of the lake and no anticipated uses of the future which the District had a right under the law to contemplate."

In other words, the District takes the position that although the jury found the Board guilty of abuse of discretion in seeking to condemn that part of the land above the 1000 foot contour line, nevertheless, the court would be without power to make an adjudication on such verdict, other than to refer the whole question back to the Board of Directors so they could make another determination as to the lands to be taken and file another proceeding, if necessary, to affect the same. That is, the appellant insists that if there

was an exercise of improper discretion, as found by the jury, "then the utmost power which the Courts could lawfully exercise (in acting on such verdict) would consist in denying the condemnation to the extent that it had proceeded in the instant case, and in sending it back for a fresh determination by the Board of Directors of the District on the quantity to be appropriated for the uses of the District in carrying out the public enterprise in which it was engaged."

■■■ The controlling issue was the alleged arbitrary action of the Board in trying to take said "excess lands" under the circumstances alleged by the appellee to constitute a clear abuse of discretion. The District's right to condemn the land below the high-water mark, or the 1000 foot contour line, was not challenged by appellee, and naturally the trial court awarded the District such lands or the easement sought therein. Since the only contested issue thus raised related to the "excess land", or that above the contour line, the court logically rendered judgment on the verdict denying condemnation thereof.

If the jury's finding as to abuse of discretion is to be given any effect, it is difficult to see what other course the trial court could have pursued. The Board's right to pass on the question being lost, it is believed that the trial court had a right to appropriate the verdict as a basis for a judgment settling all the issues between the litigants.

Otherwise, an unusual and confusing situation would be created. To remit the whole proceeding to the trial court or to the Board of Directors, with instructions to begin anew a condemnation proceeding, would be no assurance that any better results would be achieved than in the first proceeding. They might again be subjected to the same charges. Conceivably the Board might make the same determination which would result in trials and appeals indefinitely. That could result, even though the Board made a determination of acreage less in scope than the first. Plainly the doors to interminable litigation would be open and a situation absurd in its nature created.

If the jury's findings are not given the above effect, conviction on the ground of abuse of discretion would be practically meaningless and furnish nothing final and definite to govern the action of either the condemnor or the condemnee.

294

Further, the appellant and appellees are all in accord with the proposition that the taking of the appellee's land cannot be prevented except in a case of clear abuse of discretion on the part of condemnor. Such litigation proceeds on that theory. Therefore, if the rule is to be given effect, the logical conclusion is that the trial court, as in this case, may enter a judgment on the jury's findings.

The instant case is not like that of State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076, which was a tax suit. There it was held the District Court was not authorized to revalue or reassess property on findings made by the jury and render judgment thereon for taxes, but that the jurisdiction of the tax assessor and the Board of Equalization was exclusive, and that it was necessary to return the same to such authorities for assessments, etc. That proceeding is governed by statute, but in a condemnation proceeding like this there is no statute requiring that a case of this kind should be returned to the Board of Directors for a new determination.

Points 27, 28 and 29 are addressed to the admission of evidence of market and intrinsic value of the lands taken. The applicable rule of evidence was considered by this court in Taylor County v. Olds, Tex.Civ.App., 67 S.W.2d 1102. In the light of authorities there cited and the rules announced, it is not believed that these points present any reversible error. They are overruled.

For the reasons assigned, the judgment of the trial court is affirmed.